SERDATIUS KITZINGER

*v.*

GEORGE W. SANBORN *et al.*

1. CONTRACT—*to sell and deliver—not excused by bad weather.* Inclemency of weather furnishes no excuse for the non-performance of a contract to sell and deliver hogs on a specified day, unless it is expressly so provided in the contract.

2. MEASURE OF DAMAGES—*in action by purchaser against vendor for failure to deliver.* Where the vendor of hogs fails to deliver the same at the time and place agreed upon, the measure of the purchaser's damages will be the difference between the contract price and the fair market value at the time and place fixed for delivery.

3. JURY—*right to test evidence by their general knowledge and intelligence.* It is proper for the jury to apply to the facts proved their general knowledge as intelligent men. They must test the truth and weight of evidence, and what it proves, by their knowledge and judgment derived from experience, observation and reflection.

· 4. VENDOR AND PURCHASER—*latter must be ready and willing to perform.* In a suit by a purchaser of hogs, to be delivered to him at a certain time and place, to recover damages for a non-delivery, it is necessary to prove that he was ready and willing to receive and pay for the same at such time and place, but slight evidence of such fact is sufficient.

APPEAL from the Circuit Court of Winnebago county; the Hon. WILLIAM BROWN, Judge, presiding.

Mr. N. C. WARNER, and Mr. WM. LATHROP, for the appellant.

Mr. C. M. BRAZEE, for the appellees.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was an action originally brought before a justice of the peace of Winnebago county, by George W. Sanborn and others against Serdatius Kitzinger, on a contract for the sale and delivery, by the latter to the former, of twelve fat hogs by a day specified.

The trial resulted in a judgment for the defendant, which, on appeal by the plaintiffs, and trial in the circuit court, was, on trial before a jury, reversed, and a verdict rendered for the plaintiffs for nine dollars damages.

A motion for a new trial having been overruled, judgment was rendered on the verdict, for the plaintiffs.

To reverse this judgment, the defendant appeals, and makes as his principal point, that the sale and delivery of the hogs was not absolute, but conditional. He contends that the testimony establishes this point in his favor.

This was a strongly contested point before the jury. The defendant insisted that the bargain was, if the weather was good on Saturday, the hogs would be delivered, if not, and they remained in the pen until the following Monday, they were to remain the property of the defendant. At defendant's instance, the court instructed the jury as follows:

" If the jury believe, from the evidence, that the defendant, on Friday, the 13th day of January, 1871, bargained to the plaintiffs his twelve fat hogs at $5.75 per hundred weight, to be delivered to the plaintiffs, at Pecatonica, on Saturday, the following day, and, upon delivery, to be paid for by the plaintiffs, and that said agreement on the part of said defendant was upon the condition that the weather was good on said Saturday, and that if the weather was not good, and the hogs remained in the pen until Monday, the hogs were to remain the property of said defendant; and if the jury also believe, from the evidence, that said Saturday was a very stormy day, and one not reasonably fit for removing said hogs from the residence of said defendant, where said hogs then were, to said Pecatonica, then the jury should find for the defendant."

This point being made so prominent in the case, and brought distinctly to the attention of the jury by this instruction, and much testimony heard upon it on both sides, and in some respects conflicting, we could not, under repeated rulings of this court, disturb the finding of the jury. It is impossible for us to say, upon a careful examination of the testimony, that the jury have found against the preponderance of the evidence. We are inclined to coincide in opinion with the jury, that the sale and delivery were unconditional.

As to the other branch of the case—the condition of the weather on Saturday—there was conflicting testimony on that point, and nothing was shown which should have prevented the delivery on Saturday, for, if the hogs could not be driven on that day a distance of six miles, they could be hauled in wagons, or in sleighs upon the snow, of which the proof shows there was an ample supply. It is in proof, hogs were hauled to that point on Saturday, and it was no defense, to urge inclement weather as a reason for the non-performance of a contract, unless it was expressly so agreed. The jury have found it was not so agreed, and in this they are sustained by the evidence.

The next point made by appellant is, that plaintiffs were permitted to show, on the question of damages, what was the market value of such hogs at Chicago on the day they should have been delivered.

The court, at the instance of appellant, gave to the jury this instruction:

"If the jury should believe, from the evidence, that said defendant unconditionally bargained with said plaintiffs, on the 13th day of January, 1871, for the delivery to them, on Saturday, the following day, at Pecatonica, his, the said defendant's, twelve fat hogs, and that the defendant, without any legal excuse therefor, failed to deliver the same at the time and place agreed upon, then the measure of damages would be the difference between the contract price and the fair market value of said hogs at said Pecatonica on said Saturday."

It was shown on the trial, that, at the place of delivery, the market value of such products was controlled by the daily published reports of the Chicago market, to which Pecatonica was in close proximity by rail, and for which market these hogs were intended. It is a well known fact, that the price of farm products at points in the neighborhood of great business centres, like Chicago, is ruled by the prices at such centres. Every man on the jury knew this; and when the price at Chicago was proved, it was quite easy to ascertain the difference, and that difference, when ascertained and deducted, would fix the price at Pecatonica. It was proper for the jury to apply to the facts proved, their general knowledge as intelligent business men. They must test the truth and weight of evidence, and what it proves, by their knowledge and judgment derived from experience, observation and reflection. Being informed by witnesses that live hogs, like those in question, were worth, in Chicago, a certain sum per 100 lbs. on the day these were to be received at Pecatonica, it was an easy matter to determine the market value at the lat-

ter place.   Appellant made no objection to this testimony, when offered.

Another point made by appellant is, there was no evidence that appellees were ready and willing to pay for the hogs at the time and place of delivery.

This point was brought to the attention of the jury by this instruction, asked by appellant :

" That, even should the jury believe, from the evidence, that said defendant bargained his twelve fat hogs to the plaintiffs, at $5.75 per hundred weight, on January the 13th, 1871, to be delivered to the plaintiffs, at Pecatonica, on January 14th, 1871, and that the defendant failed to deliver the same, yet the plaintiffs are not entitled to recovery in this case unless it has been proven, and the jury, from the evidence, believe, that said plaintiffs were ready and willing to pay for said hogs at said agreed price at the stipulated time and place of delivery."

There was testimony before the jury, that plaintiffs were dealers, at Pecatonica, in grain and stock, and had been for several years, and that one or more of the firm was at that place on that day, ready to receive and pay for the hogs.

In *Hough* v. *Rawson*, 17 Ill. 588, which was assumpsit on an agreement to deliver a quantity of corn, this court said, the obligations to pay and deliver are concurrent, and in order to recover for non-delivery, a party must show his readiness to receive and pay—that slight evidence of a readiness to accept and pay might be sufficient.

On all the points, we concur with the jury in their finding. Appellant failed, for no sufficient reason, to perform a contract voluntarily and deliberately made, and he ought to pay such damages as the other contracting party has sustained by reason thereof.   The damages are small in this case.   They arise upon a breach of contract which appellant could have performed.

We see no error in the record. The instructions asked by appellant were all given, and no specific objection is pointed out to those given on behalf of appellees, and we perceive none.

The judgment must be affirmed.

*Judgment affirmed.*

Mr. JUSTICE SCOTT dissents.