Johnson and wife vs. Boorman.

JOHNSON and wife, Appellants, vs. BOORMAN, Respondent.

*February 7 — June 1, 1885.*

PRACTICE. *(1, 2) Evidence: Error when cured: Immaterial error. (5) Instructions: Immaterial error. (6) Verdict to be based on evidence: View.*

MILL-DAMS: FLOWAGE OF LAND. *(3) Prescriptive right how acquired. (4) Fluctuations in height of water.*

1. An error in the exclusion of evidence is cured by its subsequent admission.

2. A judgment will not be reversed for the erroneous admission of immaterial evidence which could not have prejudiced the appellant.

3. Under ch. 184, Laws of 1862 (subd. 3, sec. 4221, R. S.), one who maintains a mill-dam which causes the waters of an unnavigable stream to set back and overflow the lands of another to a certain height or extent uninterruptedly for ten years, acquires a prescriptive right to flow the lands to that extent.

4. Fluctuation in the height of the water, caused either by extraordinary rain-falls or freshets, or by extreme or unusual drouths, or by excessive draughts upon the water for the use of the mill, occasionally, will not affect or impair the prescriptive right to flow to the usual height acquired during ordinary seasons by uninterrupted use for ten years.

5. Where the charge to the jury had made prominent the idea that a prescriptive right to flow land could have been acquired only by ten years uninterrupted flowage prior to the *commencement of the action*, a reference to the extent of the flowage at the *time of the trial* is *held* not to have misled the jury.

6. The jury were told that they were to determine the questions as to the height of the dam, the amount of the flowage, and the extent to which the water was set back upon the lands, from the evidence; and that in weighing the testimony of the witnesses they were to

take into consideration their knowledge, observation, and experience in such matters, and whatever information they had obtained from a view of the premises; to consider the means of knowledge of the various witnesses, their apparent candor, etc. *Held,* not erroneous. *Washburn v. M. & L. W. R. Co.* 59 Wis. 364.

APPEAL from the Circuit Court for *Waukesha* County.

This action was commenced in April, 1880, under the mill-dam act, to recover damages for the flowage of land. The complaint alleges, among other things, that in 1874 the defendant filled up the waste weir in his dam "and raised said dam from what it was previous thereto, to the height of two feet and more, and from that date has kept up and maintained the same at an unreasonable height." The answer denies that in 1874 or at any other time within the ten years before the commencement of the action the waste weir was filled up or the dam raised. The answer also alleges, among other things, that the dam was erected by grantors of the defendant, in 1837, to its present height, and that by reason thereof the lands described in the complaint were overflowed, and that they have since then to the present time been continuously overflowed under a claim of right so to flow them. It is also alleged that the supposed cause of action did not accrue at any time within ten years next before the commencement of the action.

At the trial the plaintiff offered in evidence a deed from the defendant and wife to one Inglehart, dated March 11, 1873, of land in the vicinity of the mill, for the purpose of showing the reservations therein of the right to control the waste weir and the flow of water and the dam. The court refused to admit the deed for that purpose. Other evidence and the instructions to the jury, so far as they are material, will sufficiently appear from the opinion.

There was a verdict for the defendant; a motion for a new trial was denied; and from the judgment entered on the verdict the plaintiffs appealed.

For the appellants there was a brief by *Edwin Hurlbut*, and oral argument by *Geo. E. Robinson*. They argued, *inter alia*, that the reservation in the deed from defendant to Inglehart was an admission of the existence of the waste weir at that time, and that the defendant had control of it; and the fact whether such weir had been filled up within ten years before the suit being directly in issue, such admission was material and competent. 1 Greenl. on Ev. secs. 171, 204, 211; 1 Bouvier's Law Dict. tit. ADMISSIONS, 3; *Cook v. Barr*, 44 N. Y. 156; *Dreher v. Fitchburg*, 22 Wis. 675; *Saveland v. Green*, 40 id. 431; Rapalje & L. Law Dict. tit. RELEVANCY; *Platner v. Platner*, 78 N. Y. 95.

For the respondent there was a brief by *J. V. V. Platto* and *M. S. Griswold*, and oral argument by *Mr. Platto*. They argued, among other things, that the charge of the court as to the right acquired by ten years' continuous flowage, was correct. R. S. sec. 4221; *Ruehl v. Voight*, 28 Wis. 153; *Haag v. Delorme*, 30 id. 591; *Crosby v. Smith*, 19 id. 449; *Janssen v. Lammers*, 29 id. 88; *Cobb v. Smith*, 38 id. 21, 35. To defeat the right so acquired disuse or non-user must have continued for an equal period, and must have been with intent to abandon the right. Wood on Nuisance, sec. 728 and note 2; Washburn on Easements, 551–557; Goddard on Easements, 462; *Williams v. Nelson*, 23 Pick. 141; *Haag v. Delorme*, 30 Wis. 591; 2 Wait's Act. & Def. 738–740. Drawing down the water is evidence of user, and the consequent denudation of the land is not non-user. *Sheldon v. Rockwell*, 9 Wis. 182; *Sabine v. Johnson*, 35 id. 187, 203.

The following opinion was filed March 3, 1885:

COLE, C. J. The first error assigned for a reversal of the judgment is the refusal of the court below to admit in evidence the deed from the defendant and wife to Inglehart, for the purpose of showing the reservation on the part of

the defendant of the right to control the waste weir and the flow of water from the dam. When the deed was first offered in evidence the court only admitted it for the purpose of enabling the witness, S. T. Bolles, to fix the date. The witness had already given the date, and the deed was received apparently to confirm his recollection. We fail to perceive the materiality of this deed as evidence for any purpose whatever. That the defendant had full and complete control of the dam and of the waste weir was not a disputed fact in the case. How could it then be important to show the reservation of the right of control which was made in the deed? But there is this further most satisfactory answer to the objection. The bill of exceptions shows that at the close of the plaintiffs' case this same deed was re-offered and "read in evidence" without objection. So, if there was any error in the original ruling on this point, it was cured by subsequently admitting the deed to show the reservation.

The defendant was asked, while giving his testimony, this question: "During that period of time from 1849 to 1854, was the water ever higher than six feet above the shaft, and two feet added to that?" This was objected to by the plaintiff; but the witness was permitted to answer the question. The answer was general that the water "has never been raised." But in the subsequent conversation with the court the witness explained his answer, and showed that he intended it to apply to the period named in the question. We are not clear but the question was proper as asked. The witness was interrogated as to a physical fact in respect to the height of the water during the given period. Be this as it may, we agree with the plaintiffs' counsel in the observation that, whatever might be the answer to the question, it was not very material to the point at issue. We cannot see how it could have prejudiced the plaintiffs.

The other errors assigned relate to the refusal of the court to give certain instructions asked by plaintiffs, and to exceptions taken to portions of the charge. We shall not attempt to notice those several alleged errors in detail. All that we deem material in them will be disposed of in the general remarks which we shall make upon the charge. We will say, in passing, that we regard the charge as in the main correct, or, at least, that it contains no error of which the plaintiffs can complain. It certainly contains all the propositions of law, which were embraced in plaintiffs' instructions that were correct and pertinent to the real issues. And that there was abundant evidence to which the charge was applicable is very clear.

The fundamental and controlling proposition of law in the charge is, in effect, this: When a party maintains a mill-dam which causes the waters of an unnavigable stream to set back upon and overflow the lands of another to a certain height or extent, the right to overflow such lands to that extent becomes perfect where such lands are flowed uninterruptedly for ten consecutive years. Fluctuation in the height of the water, caused either by extraordinary rain-falls or freshets, or by extreme or unusual drouths, or by excessive draughts upon the water for the use of the mill, occasionally, would not affect or impair the prescriptive right to flow to the usual height acquired during ordinary seasons by the uninterrupted use for ten successive years.

So the jury were instructed that if they found from the evidence that for any consecutive ten years since 1852 the defendant had maintained the dam so as to cause the water to set back upon and overflow the plaintiffs' land to the extent it was flowed at the time of the trial, or had been for the previous four or five years, then his right thus to flow the same was perfect, unless he had lost that right by an abandonment of it for ten other succeeding years. Or, to state

the proposition in another way, that the defendant would acquire a prescriptive right to flow the plaintiffs' land to the extent claimed by what amounted practically to an uninterrupted use for ten years; that he would lose the right thus acquired if he had abandoned it for ten other succeeding years.    This was the pith or substance of the charge on this point.

It is certainly true, as plaintiffs' counsel suggests, the charge goes upon the theory or assumption that a right of flowage by prescription was acquired by ten years' user. That view was doubtless founded upon ch. 184, Laws of 1862, and subd. 3; sec. 4221, R. S., which in effect provide that an action for the recovery of damages for flowing lands by means of a mill-dam shall be brought within ten years from the time the lands were flowed.    These statutes abridge the period for acquiring the prescriptive right to flow land for a mill from twenty to ten years.    *Haag v. Delorme*, 30 Wis. 591.    And when the prescriptive right has been once acquired, it will not be lost by non-user alone for a less period than ten years,    It is true, the language of the law of 1862 is, "no action for the recovery of damages for the flowing of lands shall be maintained," etc., and it is argued that it was the object of the law to bar the remedy only, and not give a valid prescriptive right.    But the effect of the statute clearly is to give or secure a prescriptive right or title where one has had a quiet and uninterrupted use by flowage for ten years, in the same way that a prescriptive right or title to land is acquired by twenty years' adverse possession in other cases.    Especially must that result follow in this state, where it is held that the statute of limitations not only bars the remedy, but destroys the right itself, after the time prescribed by it has once elapsed.    *Brown v. Parker*, 28 Wis. 21; *Pierce v. Seymour*, 52 Wis. 272.

It is said that it does not appear that the occupancy or use was adverse, so as to defeat the plaintiffs' claim for

damages. But that view is untenable. The evidence shows that the defendant has claimed the right to flow the lands as they are now flowed since 1854, and it does not appear that his right was questioned until this suit was commenced, in April, 1880. The case, in all of its leading facts, is distinguishable from *Cobb v. Smith*, 38 Wis. 21, where the right of the defendants to flow the lands had been constantly challenged and denied by the plaintiffs. Here the jury must have found, under the charge of the court, that the defendant had, for ten consecutive years, overflowed the plaintiffs' premises to the extent they were flowed when the suit was commenced, or to the extent they had been flowed for the previous four or five years, and that he had not lost the right to flow such premises by an abandonment or by a non-user for a like period. If there is any error in this charge, it is certainly an error in favor of the plaintiffs.

The court further instructed the jury that if, at the time of trial, or for three years prior to the commencement of the action, the flowage had been increased, the plaintiffs were entitled to recover damages for such increased flowage. A criticism is made upon the verbiage of the charge, because the learned circuit judge referred to the extent of flowage at the time of *trial;* but the jury could not have misapprehended his meaning. The idea is made so prominent in the charge that it was essential, in order to acquire a prescriptive right, that the defendant should show that he had uninterruptedly, for ten successive years, overflowed the plaintiffs' lands to the extent they had been flowed for four or five years prior to, and at the commencement of, the action, that this reference to the condition of things at the time of trial could not have misled the jury.

The circuit judge told the jury that they were to determine the questions as to the height of the dam, the amount of the flowage, the extent to which the water was set back upon the lands, from the evidence in the case; and in weigh-

ing the testimony of the witnesses they were to take into consideration their knowledge, observation, and experience in regard to such matters, and whatever information they had obtained from a view of the premises; to consider the means of knowledge of the various witnesses who had testified, their apparent candor, etc. Now it is said the idea conveyed to the jury by this charge was that they were to test the value of the testimony by what they knew of the relation between cause and effect in matters pertaining to flowage in general, without regard to the facts proven in the case. This is not a just criticism on the remarks of the circuit judge. The jury had made a view of the premises, saw the height of the dam, the condition of the waste weir, and the extent of the flowage. They were simply told they might use this knowledge obtained by this personal examination in weighing the conflicting testimony upon these points. This is all the instruction really amounts to. Besides, the jury were distinctly directed to ascertain the truth of the matter and the real facts from all the testimony. The remarks of the circuit judge were fully sanctioned by the decision in *Washburn v. M. & L. W. R. Co.* 59 Wis. 364, and error cannot be predicated upon them.

We cannot reverse the judgment because the verdict is contrary to the weight of evidence. There is sufficient testimony to support the finding.

These observations dispose of all the exceptions to the charge which we deem it necessary to notice.

*By the Court.*— The judgment of the circuit court is affirmed.

A motion for a rehearing was denied June 1, 1885.