SOLBERG, Appellant, vs. ROBBINS LUMBER COMPANY, Respondent.

*October 24—November 14, 1911.*

*Appeal: Affirmance and reversal: Trial: Instructions to jury: Statements of fact: Injury to servant from unguarded saw: Jury: View: Use of juror's personal knowledge in weighing testimony.*

1. A mere possibility that the trial court was wrong in stating something as a fact to the jury is not ground for reversal of the judgment, especially where there was evidence strongly tending to support the court's conclusion and none to the contrary, and the jury, aided by a view, were in a position to determine whether the statement was correct, and the trial court's attention was not in any way called to the alleged misapprehension of the facts.

2. So *held*, in an action for injuries to an employee in a planing mill caused by his hand coming in contact with uncovered saws in a lath machine, where the trial court instructed the jury that if they found plaintiff had ever, before the injury, raised and lowered the saws in question by means of a little wheel under the lath machine table, then they should conclude that he must have seen the saws and known that they were not covered.

3. The knowledge which jurors acquire from a view may be used by them in determining the credibility of testimony or the correctness of statements of fact by the court.

4. In determining the credibility of testimony one or more jurors may use the knowledge which they have gained from observation and experience not common to all the jurors, and may give the benefit of such knowledge to their fellow jurors.

5. Considered in connection with the general charge in this case, in which the jury were repeatedly told that they should find the facts from the evidence given in court, and in connection with the question asked by a juror as to their right to use their special knowledge "in weighing this evidence," the language of the trial court in answering such question—to the effect that a juror who has personal expert knowledge is entitled to use it in assisting him and in assisting the other jurors in arriving at a right verdict—is *held*, though somewhat ambiguous in itself, to accord with the foregoing rule and not to have misled the jury into supposing that they might treat their special knowledge as evidence or use it otherwise than in determining the credibility of the testimony offered by the parties.

APPEAL from a judgment of the circuit court for Oneida county: A. H. REID, Circuit Judge.    *Affirmed.*

The complaint alleged that the defendant was engaged in the business of manufacturing and dressing lumber, and that defendant had in operation in its planing mill a machine known as a "matcher," equipped with rapidly revolving knives and gearing, the frame of which was about fifteen feet long and six feet wide, the machine being used for surfacing lumber; that one foot distant from the rear end of such matcher a machine known as a lath machine was installed, the front end of which faced the matcher, the beds of the two machines being on a level.   These machines were used conjunctively, lumber being passed from the bed of the matcher to the lath machine.   The framework of the lath machine was about five feet long, three feet wide, and four and one-half inches up and down, and the bed or frame plate attached to the top of the frame was about three feet from the floor. Above the frame plate were a number of small rotary saws, and immediately below and seven inches back of the front end of the frame plate were two rotary saws, nine inches in diameter, in perpendicular position, extending about three and one-half inches below such plate.   The saws were attached to an axle connected with shafting and belting propelled by steam power.   For the purpose of raising and lowering these saws there was a small wheel underneath the frame plate, to one side of and about on a line with the saws. Plaintiff began work for the defendant about November 1, 1908, and in the performance of his duties was required to operate said matcher.   On the morning of November 5th a large pile of sawdust and other mill refuse had accumulated on the floor between the matcher and the lath machine.   It is alleged that it was necessary for plaintiff to oil a spindle cock underneath the matcher, and that in attempting to remove the sawdust and refuse to make room for him to crawl under the machine as was necessary in order to accomplish

his purpose, his right hand came in contact with the uncovered and unguarded lath machine saws, as a result of which plaintiff's hand was injured. The complaint further alleges violation of sec. 1636*j*, Stats. (1898), for failure to properly fence or guard the saws on said lath machine. The answer puts in issue all the material allegations of the complaint, and alleges that such injury was not caused by any negligence on the part of the defendant, but was due to negligence and want of ordinary care on the part of the plaintiff. By its answers to questions submitted on a special verdict the jury found, among other things, that plaintiff knew and appreciated the danger of coming in contact with the saws, and that plaintiff by his failure to use ordinary care proximately contributed to produce his injury. The court ordered judgment dismissing the complaint, from which judgment this appeal is taken.

*W. K. Parkinson,* for the appellant.

For the respondent there was a brief by *E. D. Minahan* and *Aarons & Niven,* and oral argument by *C. L. Aarons.*

BARNES, J. Appellant insists that the court erred in giving the following instruction to the jury:

"And you should consider and decide whether the plaintiff ever raised and lowered the saws in question by means of the little wheel under the lath machine table, and if you find that he did so before his injury then you will conclude that he must have seen the saws and known that they were not covered, and in that event you should take that into consideration."

The fault found with the instruction is that the court assumed that it was an established and undisputed fact in the case that the plaintiff must have seen the saws of the lath machine and have known that they were not guarded, if he raised these saws by means of the wheel under the table of the machine, whereas the jury would be warranted in reaching a contrary conclusion on the evidence.

A reading of the testimony does not throw any satisfactory·
light on the question, as very little of it pertains to the point
and that only in an incidental way. In fact, there does not
appear to have been much of a controversy upon the question
on the trial. A photograph showing the wheel and the pro-
jection of the saws under the table of the lath machine, as
well as the absence of a guard, was in evidence. Respondent
argues that this photograph shows to a demonstration that
the court was right. The trial judge in his opinion on the
motion for a new trial stated that it was perfectly obvious
from an inspection of the photograph that it was impossible
to look for and find the little wheel under the lath machine
table, by means of which the saws were raised and lowered,
and which was located within a few inches of the saws, with-
out seeing the saws and observing that they were unguarded.
The conclusion of this court is that it is highly improbable
that plaintiff did not see the saws during the operation, but
that it is not an impossibility. The questions, therefore, are:
Does the record show that the court erred, and, if so, was the
error prejudicial?

Some significance should be attached to the fact that plaint-
iff's counsel did not in any way call the attention of the court
to the alleged misapprehension of the facts, as we think is
customary though perhaps not obligatory. Trial courts are
uniformly careful not to invade the province of the jury in
determining questions of fact, and if the court's attention
had been called to the alleged error it would undoubtedly have
been corrected, if error it was.

The court and the jury viewed the premises and the ma-
chines in question. The knowledge which jurors acquired
from such view they had the right to use in determining the
credibility of the evidence offered. *Washburn v. M. & L. W.
R. Co.* 59 Wis. 364, 368, 18 N. W. 328; *Neilson v. C., M. &
N. W. R. Co.* 58 Wis. 516, 523, 17 N. W. 310; *Johnson v.
Boorman,* 63 Wis. 268, 22 N. W. 514; *American States S. Co.*

*v. M. N. R. Co.* 139 Wis. 199, 205, 120 N. W. 844, and cases cited. This being so, they had the right to use such knowledge in determining whether the court made a correct statement of fact. We have no means of knowing just what knowledge the jury imbibed from this view. The jurors might have reached a different conclusion from that arrived at by the court and might have disregarded his mistake entirely in arriving at a verdict, if any mistake was in fact made.

Sec. 3072*m,* Stats. (Laws of 1909, ch. 192), provides:

"No judgment shall be reversed . . . on the ground of misdirection of the jury, . . . unless in the opinion of the court to which the application is made, after an examination of the entire action, . . . it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment."

After examining the record this court is far from being satisfied that the trial court committed any error. The evidence offered, as far as there is any, strongly tends to support the conclusion of the trial court, and there is no evidence to the contrary. There is, of course, the possibility that the trial court was wrong, but this falls far short of an affirmative showing of prejudicial error, or in fact of any error. Under such circumstances the judgment should not be reversed. *Wiese v. Riley,* 146 Wis. 640, 132 N. W. 604.

After the jury had been deliberating for some time they were called into the court room and the following colloquy took place:

"A Juror: A question we want to know was this: I asked you the other day if in deciding this question jurors were supposed to take into consideration the things in regard to this:—in case they positively know this from experience. For instance, if one has, to use a hypothetical case, if he is an expert, is the juror supposed to use the information that he knows in regard to that in weighing this evidence and convincing other jurors as to the facts of the case?

"The Court: I understand your question, I think. It is usual to instruct a jury in some cases that they are expected to use all of the knowledge, skill, and judgment that they possess and bring that to bear upon questions involved. A juror who has expert knowledge, that is personal, not hearsay, is entitled to bring that to bear in assisting him and in assisting the other jurors in arriving at a right verdict. In fact it is impossible to separate a juror from his personal knowledge any way and he is expected to use that. That is part of his mental equipment in discharging his duty.

"The Juror: In this case it has developed there are several that understand the construction of these machines. We can't very well separate from—

"The Court: You are not required to separate that knowledge from anything else. You are entitled to use it."

It is argued that the court committed prejudicial error in that the jury were advised that they might return a verdict upon their knowledge or supposed knowledge not derived from the evidence in the case. The language used by the court was not happy, in that there is a possibility that it might have misled the jury into the belief that they were at liberty to treat their knowledge as evidence and decide the case upon such knowledge rather than upon the testimony, and even in opposition thereto. This they might not do. *Washburn v. M. & L. W. R. Co.* 59 Wis. 364, 370, 18 N. W. 328; *Johnson v. Boorman,* 63 Wis. 268, 22 N. W. 514; *Sherman v. Menominee River L. Co.* 77 Wis. 14, 22, 45 N. W. 1079. The court told the jury at the beginning of its charge:

"It is your duty to answer these questions according to the fact in each instance as you shall find the fact to be from *the evidence given here in court.* . . . In deciding these questions you should confine your consideration to *the evidence given here in court* and the proceedings had here in your presence."

As to each of the questions propounded to the jury, they were told in substance to answer them according to the preponderance of the evidence. The charge repeatedly in-

formed the jury that the case must be decided upon the evidence given on the trial. The juror who asked the question above quoted undoubtedly so understood the charge, because he did not ask if the jurors might use their special knowledge as evidence, but if the jurors *might consider such knowledge in weighing the testimony offered* by the parties.

In view of the repeated statements of the court above referred to, we think the jury would construe the somewhat ambiguous language of the court as no more than an affirmative answer to the question asked and as informing them that they might use the knowledge which they had gained from observation and experience in determining the credibility of the evidence. What the juror said in effect was that he and some of his fellow jurors had practical knowledge of the construction of lath machines, not common to all the panel. The language used by the court was certainly no more calculated to mislead than the charge which was held not to be erroneous in *Neanow v. Uttech,* 46 Wis. 581, 586, 1 N. W. 221. There the court instructed as follows:

"You are to bring to bear upon this question [the exercise of ordinary care], your own knowledge and your own judgment. It is for you to examine all the testimony, all the surroundings, all the circumstances, and then apply your own judgment, your own good sense, and answer the question either in the negative or affirmative."

There was no assertion that the jurors had any knowledge of the specific facts in the case on trial, and nothing to indicate that the juror who asked the question or any of his associates was a competent witness rather than a qualified juror. It is well settled that jurors cannot supply a material item of evidence by assuming knowledge on the subject. It is just as well settled that it is highly improper for a juror to assert in the jury room knowledge on some specific point involved in the trial which would make him a material witness. If use is to be made of such knowledge it should be given under

oath from the witness stand, where the party adversely affected would have the right of cross-examination.

So we think the real question here is, May one or more jurors use the knowledge which they have gained from observation and experience not common to all the jurors in determining the credibility of the evidence offered, and give the benefit of such knowledge to their fellow jurors who may lack such information? Lawyers know that jurors always have and always will do just what we think the court in effect said might be done here, and it is difficult to see how they could well do otherwise. [If a juror knows that a plaintiff in an action is a man of character and standing, whose word is as good as his bond in the community in which he lives, and that the defendant is shifty, tricky, untruthful, and unreliable, and a question of veracity arises between the two, it is well nigh impossible for him to remain oblivious to the facts which he knows when he is determining the question of credibility.] So, too, when one witness testifies to something which the observation and experience of the juror tells him is false, while another witness has testified in reference to the same matter to what he knows to be the truth, it is difficult to imagine how a juror could disregard what he knows in passing upon the credibility of the witnesses. If he could do it, it is not desirable that he should, because that knowledge is part of the equipment which he brings with him to the jury box. A person is not supposed to forget everything he ever knew and become an automaton when he is sworn as a juror. He may make use of the intelligence with which he is endowed and the knowledge he has gained for the legitimate purpose of passing upon the credibility of the evidence.

It is said in the discussion of the first error assigned that jurors may use the knowledge which they acquire from a view of the *locus in quo,* in passing upon the credibility of evidence, and the proposition is well settled by the cases cited and referred to. Knowledge gained in this way is no more

sacred than knowledge acquired in some other way, provided it is actually acquired. It is proper for trial courts to instruct juries that in weighing testimony they must take into consideration their knowledge, observation, and experience. Such an instruction has been approved by this court. *Johnson v. Boorman,* 63 Wis. 268, 274, 275, 22 N. W. 514. Juries are frequently and properly told that in determining the credibility of testimony they may consider the appearances of witnesses on the stand, the manner in which they give their testimony, and the candor or lack of candor with which it is given. So, too, it has been held proper to instruct a jury in a personal injury action brought by a minor that they might consider the plaintiff as he had been exhibited before them on the witness stand, in determining the question of his intelligence and capacity to apprehend and avoid the dangers incidental to his employment. *Disotell v. Henry Luther Co.* 90 Wis. 635, 64 N. W. 425. In fact, cases in this court and generally elsewhere are to the effect that jurors may use common knowledge in deciding the weight that is to be accorded to the evidence adduced.

There is authority for the proposition that the knowledge which a juror may use in enabling him to pass upon the credibility of testimony must be knowledge that is common to all the jurors, and an *obiter* expression in *Northern S. Co. v. Wangard,* 123 Wis. 1, 100 N. W. 1066, might well be understood as so holding. This would seem to be a narrow rule if not an unwise one. The knowledge which men acquire in the rugged school of experience is a valuable asset to them when they are called upon to perform jury duty. If there is a conflict in evidence pertaining to some fact upon which a farmer has acquired knowledge by his experience which is not common to the general run of mankind, but which enables him to decide with accuracy who is telling the truth, the half dozen farmers who may be on a jury should be permitted to use that knowledge and give their *confrères* the benefit of it.

The other jurors are not bound to accept the statements as conclusive, but may give them such weight as they think they are entitled to. What is true of the farmer is true of those following other vocations. Usually our juries are cosmopolitan in character, being made up of the farmer, the mechanic, the business man, and the ordinary laborer. It is largely because juries are selected from all the walks of life that they ordinarily make such desirable triers of fact. Some jurors on almost every panel are at least apt to have some knowledge that is not common to all the jurors, and which may be a valuable aid in separating false or mistaken testimony from that which is true. Take the ordinary case of an accident at a street crossing, where the alleged negligence consists in running a car at an excessive rate of speed, and some witnesses swear that it was running thirty miles an hour, while others say it was running but three or four miles an hour, and the undisputed evidence is that the car was stopped within ten feet or less from the place of collision. Many jurors who live in rural districts may not know anything about the distance within which a car may be stopped. Other jurors may know from their observation and experience that a car going at the rate of thirty miles an hour cannot be stopped in ten feet. Must they divest themselves of this knowledge because it is not common to all the jurors? We do not think so. Looking at the question from a practical point of view, they cannot do so, and there is little use in building up a theoretical rule of law that will not and in fact cannot work when it is put to practical application. There is a greater dearth of authority upon the point than one would expect to find. The Massachusetts court, without discussion or citation of authority, intimated, if it did not decide, in *Schmidt v. New York Union Mut. F. Ins. Co.* 1 Gray, 529, that a juror could use his personal knowledge of some particular fact in weighing evidence only when the fact was a matter of common observation or general knowledge. The South Carolina court

holds that a juror who has knowledge of the infamous charac-
ter of a witness may use that knowledge in passing upon the
credibility of the witness, although it may not be common to
all the jurors, and in support of its conclusion says, in *State v.
Jacob,* 30 S. C. 131, 136:

"While it is undoubtedly true that a jury is not at liberty
to consider any fact pertinent to the issue which they are
called upon to try, unless it is found in the testimony adduced,
even though such fact may be known to some one, or all, of
the jury; yet this rule does not, and cannot, from the very
nature of things, forbid a juror, in weighing the credibility
of the testimony, from taking into consideration his own
knowledge of the character of the witness delivering such
testimony.　The credibility of testimony is a question ex-
clusively for the jury, and we do not see how it is possible for
a juror in considering that question to exclude from his mind
his own knowledge of the character of the witnesses.　The
question is, what impression does the testimony make upon
the minds of the jurors, and that impression must necessarily
be affected by their own knowledge of the character of the
witnesses from whom such testimony proceeds.　We suppose
that it rarely, if ever, happens that the character of at least
some of the witnesses is not known to some or all of the jurors,
and we do not see how any rule of law can prevent such knowl-
edge from having its weight.　If a fact is testified to by a
witness whom the jurors know to be of such an infamous char-
acter as to render him totally unworthy of belief, it is difficult
to understand how any rule of law can compel a jury to be-
lieve that which they cannot believe.　The constitution of
the human mind renders such a rule as that contended for
utterly impracticable."

To the same effect is *McKain v. Love,* 2 Hill (S. C.) 506.

The form of instruction that appears to be most generally
approved is, that the jury in examining the evidence and in
determining the weight to be given to it may use such general
practical knowledge as they may have upon the subject.
*Willis v. Lance,* 28 Oreg. 371, 43 Pac. 487; *Douglass v.
Trask,* 77 Me. 35; *Johnson v. Hillstrom,* 37 Minn. 122, 33

N. W. 547; *Kitzinger v. Sanborn,* 70 Ill. 146; *People v. Zeiger,* 6 Parker's Crim. Rep. 355; 1 Brickwood's Sackett on Instructions, § 410.

This rule does not say, and we think it does not mean, that the knowledge must be common to all the jurors. We conclude that the instruction, rightly understood, was not erroneous. Moreover, we do not think that the instruction could prejudice the jury in answering the questions which were answered adversely to the contention of the plaintiff.

*By the Court.*—Judgment affirmed.