STATE of Wisconsin, Plaintiff-Respondent,

v.

Joel Joseph LOBERMEIER, Defendant-Appellant.†

Court of Appeals

*No. 2011AP68–CR. Submitted on briefs May 8, 2012.*
*—Decided June 12, 2012.*

2012 WI App 77

(Also reported in 821 N.W.2d 400.)

†Petition for Review denied 10/16/12.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Andrea Taylor Cornwall* and *Kaitlin A. Lamb*, assistant state public defenders of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *Daniel J. O'Brien*, assistant attorney general.

Before Curley, P.J., Fine and Brennan, JJ.

¶ 1. FINE, J. Joel Joseph Lobermeier appeals the judgment entered on jury verdicts convicting him of armed robbery, *see* WIS. STAT. § 943.32(2), aggravated battery to the elderly, *see* WIS. STAT. § 940.19(6)(a), and taking and driving a car without the owner's consent, *see* WIS. STAT. § 943.23(2), all as party to a crime, *see* WIS. STAT. § 939.05. He also appeals the trial court's order denying his motion for postconviction relief. He claims that the trial court erred in: (1) telling the jurors that they could not use their specialized knowledge in deciding the case; (2) concluding that Lobermeier voluntarily decided not to testify at the trial; and (3) deciding that the State's failure to disclose the full extent of a witness's criminal history did not prejudice Lobermeier. We affirm.

**I.**

¶ 2. The State charged Lobermeier with robbing and beating ninety-six-year-old Marie Heinitz and taking her car without her consent, all as party to a crime. The key to Lobermeier's defense was his argument that Heinitz's identification of him was flawed. Thus, his trial lawyer told the jury in his opening statement that although "someone robbed" Heinitz, "[t]hat person is

460

not Joel Lobermeier." In support of that theory, Lobermeier's trial lawyer pointed out that Heinitz had difficulty identifying Lobermeier at her videotaped deposition. In his closing argument, Lobermeier's trial lawyer reminded the jury despite the struggle and beating, no physical evidence connected Lobermeier to the crime, and that Heinitz's age made her identification of him not reliable:

> [S]he's up to 96, and again even though she has this amazing ability to come to court, to work around the house, the judge to you explained what your role as a juror is, to use that common sense, to use that same common sense that you use in judging everyday events in your own lives.
>
> What that tells you and what you should know is that Ms. Heinitz, at 96, may not have the same ability to process information, relay information that some of us have. And what is [sic] should also tell you is that [the date of the crimes] Ms. Heinitz was mistaken about who came and robbed her in her home.

## II.

¶ 3. As we will see, two of the things about which Lobermeier now complains (the trial court's instructions to the jurors, and the extent of a witness's criminal history) require that we apply the law that guarantees every defendant a constitutionally adequate defense. To establish constitutionally deficient representation, a defendant must show: (1) deficient representation; and (2) prejudice. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). To prove deficient representation, a defendant must point to specific acts or omissions by the lawyer that are "outside the wide range of professionally competent assistance." *Id.,* 466 U.S. at 690. To prove prejudice, a defendant must

461

demonstrate that the lawyer's errors were so serious that the defendant was deprived of a fair trial and a reliable outcome. *Id.*, 466 U.S. at 687. Thus, in order to succeed on the prejudice aspect of the *Strickland* analysis, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, 466 U.S. at 694. This is not, however, "an outcome-determinative test. In decisions following *Strickland*, the Supreme Court has reaffirmed that the touchstone of the prejudice component is 'whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.'" *State v. Smith*, 207 Wis. 2d 258, 276, 558 N.W.2d 379, 386 (1997) (citations and quoted source omitted).

¶ 4. Further, we need not address both aspects of the *Strickland* test if the defendant does not make a sufficient showing on one. *See Strickland*, 466 U.S. at 697. Finally, our review of an ineffective-assistance-of-counsel claim is mixed. *See State v. Johnson*, 153 Wis. 2d 121, 127, 449 N.W.2d 845, 848 (1990). A circuit court's legal conclusions whether the lawyer's performance was deficient and, if so, prejudicial, are questions of law that we review *de novo. Id.*, 153 Wis. 2d at 128, 449 N.W.2d at 848. If those legal conclusions are based on facts found by the circuit court, those findings of fact will not be disturbed unless they are clearly erroneous. *Id.*, 153 Wis. 2d at 127, 449 N.W.2d at 848. We turn first to Lobermeier's two complaints that require application of *Strickland*.

462

## A. *Instructions to the jurors.*

¶ 5. Pointing out that *Solberg v. Robbins Lumber Co.*, 147 Wis. 259, 266–267, 133 N.W. 28, 31 (1911), opined that jurors may use what they know about life in assessing the evidence even though that knowledge is not common to all the jurors, Lobermeier argues that the trial court impermissibly told the jury that it could not. First, we look at what *Solberg* said, and then we see what the trial court told the jury.

> The knowledge which men acquire in the rugged school of experience is a valuable asset to them, when they are called upon to perform jury duty. If there is a conflict in evidence pertaining to some fact upon which a farmer has acquired knowledge by his experience, which is not common to the general run of mankind, but which enables him to decide with accuracy who is telling the truth, the half dozen farmers who may be on a jury should be permitted to use that knowledge, and give their confrères the benefit of it. The other jurors are not bound to accept the statements as conclusive, but may give them such weight as they think they are entitled to.

*Id.* at 267–68. *See also State v. Heitkemper*, 196 Wis. 2d 218, 225–226, 538 N.W.2d 561, 564 (Ct. App. 1995) ("Jurors may rely on their common sense and life experiences during deliberations. This knowledge may include expertise that a juror may have on a certain subject.").

¶ 6. The first comment about which Lobermeir complains is the trial court's colloquy with a jury-panel member who did not make the jury, but the colloquy was heard by those jurors who did:

> THE COURT: Is there anybody here who works in any kind of job where you focus on senior citizens

and particularly work with senior citizens on issues having to do with personal security, with driving, with financial affairs, with any kinds of ailments that senior citizens can sometimes have having to deal with memory, with ability to get around, anything like that, vision; anybody have a job like that?

. . .

[PANEL MEMBER]: I'm a nurse. I work in a hospital, so I do take care of senior citizens on a frequent basis and help them with some of the issues that you are talking about.

. . .

THE COURT: Okay. So a large number of your patients are senior citizens?

[PANEL MEMBER]: Yes.

THE COURT: How large would you?

[PANEL MEMBER]: Greater than half.

THE COURT: Okay. Do you have any special training in dealing with senior citizens on issues having to do with personal security or memory or things like that?

[PANEL MEMBER]: I wouldn't say special training, but I'm definitely familiar with it having or working with them all the time.

THE COURT: In this case the jury may be asked — I'm sorry, the jury may be asked to decide questions that involve issues like that. I'm not sure if the jury will or not, we'll have to see how the evidence turns out. But those sometimes happen in cases where senior citizens are victims, at least alleged to be victims.

If you're called as a juror in this case, you have to decide the case based on the evidence presented here.

The jury is not allowed to turn to you as an expert and say, well, what do you think?

The reason we don't allow that is is the lawyers don't get their shot at you. They don't get to ask you questions about whether you really know what you're talking about or whether you have the right kind of experience or whether you've considered all the other facts in the case.

So if you were to be part of this jury, you would have to decide the case based on the evidence and not based on any particular expertise that you might have. If you're called as a juror, can you do that?

[PANEL MEMBER]: Yes.

Lobermeier contends that this tainted the jury, especially in light of the trial court's preliminary and final instructions, which we will set out after we see the other comments the trial court made to the jury panel that Lobermeier finds objectionable.

¶ 7. The next panel member to whom the trial court talked was a nursing assistant, and she told the trial court that "most" of her patients were senior citizens. She denied having any special training and answered "no" to the trial court's question whether there was "[a]nything about your experience that you thing [sic] would make you a[n] expert in dealing with senior citizens?" The trial court then asked: "If you're called as a juror in this case, would you be able to set aside what you know from senior citizens from having treated them in [the] hospital, and decide the case based only on the evidence presented here?" The panel member said that she would. She served on the jury.

¶ 8. Another member of the panel who served on the jury worked "as a physical therapist assistant at a rehab hospital for brain injury and comma [sic]" in "a

465

population of teenagers to elderly." She estimated that during her twenty-five years in that job, they had "our share of elderly. Could be like 50 percent at times." The trial court asked her: "If you were called as a juror, would you be able to set aside the things that you know about senior citizens and their special issues and decide this case based only on the evidence you hear here?" The panel member replied, "Yes."

¶ 9. The trial court asked a similar question to a panel member who was "a registered nurse on acute care in a hospital setting" with a "large number of senior citizens": "If you're called as a juror in this case, would you be able to set aside the special things you've learned about caring for senior citizens and decide the case based only on the evidence presented here?" She said that she would. She did not make the jury.

██

¶ 10. The trial court gave the parties written copies of a jury instruction it said it would use: "In weighing the evidence, you may take into account matters of your common knowledge and your observations and experience in the affairs of life." The trial court, however, orally modified this and told the jury at the start of the trial and at the end:

- Start: "In weighing the evidence you may take in [sic] into account your own common sense and common knowledge about the way things work in everyday life."

- End: "In weighing the evidence, you may take into account your own common sense and your common knowledge about the ways that things work in everyday life."

Lobermeier faults the trial court for omitting "observations and experience in the affairs of life." Lobermeier,

however, never objected to either the trial court's *voir dire* colloquy or to the oral modification of the instruction.

■

¶ 11. As we have seen, the normal rule is that when a defendant complains that the trial court erred, but the defendant's lawyer did not object at the trial, we review the alleged error in an ineffective-assistance-of-counsel context. *See State v. Jones*, 2010 WI App 133, ¶ 25, 329 Wis. 2d 498, 512–513, 791 N.W.2d 390, 398 (unobjected-to alleged trial-court error). This applies to the trial court's colloquy with the jury panel. It may not, however, apply to the trial court's modification of the written instructions it gave to the lawyers. WISCONSIN STAT. RULE 805.13(4) provides:

> The court shall instruct the jury before or after closing arguments of counsel. Failure to object to a *material variance* or omission between the instructions given and the instructions proposed does not constitute a waiver of error. The court shall provide the jury with one complete set of written instructions providing the burden of proof and the substantive law to be applied to the case to be decided.

(Emphasis added.)[1] As we show below, the trial court's "variance" between the written copy of the instruction it gave to the lawyers and the oral instructions given to the jury at the start and at the end of the trial was not "material." Thus, here, too, we evaluate Lobermeier's claim in an ineffective-assistance-of-counsel context, especially because after the jury retired to begin its deliberations, the trial court asked the lawyers if there

---

[1] Rules of civil procedure are made applicable to criminal proceedings by WIS. STAT. § 972.11(1). *See State v. Devries*, 2011 WI App 78, ¶ 2, 334 Wis. 2d 430, 433, 801 N.W.2d 336, 337.

was "[a]nything we need to put on the record outside the presence of the jury," and neither the State nor the defense said that there was.[2]

¶ 12. Lobermeier claims that the trial court's deletion of the phrase "observations and experience in the affairs of life" prevented those jurors with experience in dealing with and treating the elderly from using that experience to assess the evidence, and that this violates the rule announced in *Solberg*. Assuming without deciding that his lawyer should have objected to the trial court's revision of the instruction it gave to the lawyers in writing, Lobermeier has not, by any stretch of the imagination, shown *Strickland* prejudice.

■

¶ 13. A defendant who contends that something his or her lawyer did was constitutionally deficient representation must show how that would have changed things or, in the words of *Smith*, 207 Wis. 2d at 276, 558 N.W.2d at 386 (quoted source omitted), made the trial's outcome " 'unreliable or the proceeding fundamentally unfair.' " *See also State v. Flynn*, 190 Wis. 2d 31, 48, 527 N.W.2d 343, 349–350 (Ct. App. 1994) (A defendant who alleges that his lawyer was ineffective

---

[2] We recognize that our analysis of "material" and WIS. STAT. RULE 805.13(4)'s non-forfeiture mandate is somewhat of a chicken-or-egg conundrum. But, as we explain in the main body of this opinion, the non-material variance here was harmless in any event. We thus do not have to decide whether not objecting to an alleged "material variance" in response to a trial court's question (as opposed to mere silence, which is, apparently, envisioned by the Rule) forfeits the right to a direct review of that issue. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed). *State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514, 520 (Ct. App. 1989) ("cases should be decided on the narrowest possible ground").

because the lawyer was deficient in his or her representation must show what the lawyer should have done and how it would have accomplished the result the defendant now seeks.). Lobermeier has not done that; he has not shown what "experience" any of the jurors had would have added beyond what everyone knows from their common sense appraisal of life—namely, that some but not all elderly persons have problems with perception and memory.[3] Indeed, as Lobermeier's trial lawyer recognized in the part of his summation we have reproduced, Heinitz was remarkably spry and independent for her age. Given what everyone knows from life and Lobermeier's failure to tell us *what* in addition any of the jurors' "experience" would have brought to the table, he has not carried his burden to show *Strickland* prejudice.

¶ 14. As we noted, we are not deciding whether WIS. STAT. RULE 804.13(4) eliminated the need for Lobermeier's trial lawyer to object to the change in the

---

[3] That not all elderly persons have problems with perception and memory is exemplified by two jurists who recently died. The first is the Honorable Milton Pollack, whom the writer of this opinion knew, and who served with distinction as a United States District Court judge for the Southern District of New York handling extremely complex matters well into his nineties. *See* http://www.nytimes.com/2004/08/16/obituaries/16 pollack.html (last visited May 26, 2012). The second is the Honorable Wesley Brown, who was appointed by President John F. Kennedy to the United States District Court in Kansas, and who died earlier this year at the age of 104. Judge Brown "continued to hear a full docket well past 100, and then went part time within the past year," that is, 2011. *See* http://www.kansas.com/2012/01/24/2187734/federal-judge-wesley -brown-dies.html#storylink=cpy (last visited May 26, 2012).

written instructions when the trial court orally instructed the jury on how they could use what they knew from life, because if the trial court erred by not adhering to the written version of the instruction, that error was harmless beyond a reasonable doubt. Wisconsin has two overlapping formulations of the harmless-error rule both of which put the burden on the State: (1) "Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?" or, in an alternative phrasing (2) Has the State shown "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *See State v. Mayo*, 2007 WI 78, ¶ 47, 301 Wis. 2d 642, 668, 734 N.W.2d 115, 127–128 (citations and internal quotation marks omitted). This is different than the burden of proving *Strickland* prejudice, which, as we have seen, is on the defendant. *See Flynn*, 190 Wis. 2d at 51 n.7, 527 N.W.2d at 351 n.7. For the reasons already noted, the State has fulfilled its harmless-error burden under either formulation of the test, assuming without deciding that the trial court erred by orally modifying the written instruction it gave to the lawyers.

B. *Prior convictions of witness.*

¶ 15. Donald Thornton supported the State's theory that Heinitz knew Lobermeier before the day the State said Lobermeier robbed and attacked her, and took her car. Lobermeier contends that: (1) he was denied his constitutional right to due process because the State inaccurately told Lobermeier's trial lawyer that Thornton had two convictions, rather than what the State now concedes, six; and (2) his trial lawyer gave him constitutionally deficient representation by not ascertaining the correct number. We disagree.

¶ 16. WISCONSIN. STAT. § 971.23(1)(f) requires the State to disclose to a defendant "[t]he criminal record of a prosecution witness which is known to the district attorney." This is important because a jury may consider the number of times a witness has been criminally convicted in assessing that witness's credibility. *See State v. Smith*, 203 Wis. 2d 288, 297, 553 N.W.2d 824, 828 (Ct. App. 1996) ("[T]he law presumes that the number of convictions is relevant to a witness's credibility[.]"). In Wisconsin, however, the jury does not know what the crimes were—just how many, unless either the witness does not follow the script and give the number approved by the trial court, *see State v. Rutchik*, 116 Wis. 2d 61, 76, 341 N.W.2d 639, 646 (1984); *Voith v. Buser*, 83 Wis. 2d 540, 546, 266 N.W.2d 304, 307 (1978), or identifying the crimes is necessary to rehabilitate that witness, *State v. Bailey*, 54 Wis. 2d 679, 690, 196 N.W.2d 664, 670 (1972) ("The nature of the crime may be explained to rehabilitate the witness.").

¶ 17. WISCONSIN STAT. RULE 906.09 governs when a witness's convictions may be used to impeach that witness. As material, it provides:

> **(1)** GENERAL RULE. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime or adjudicated delinquent is admissible. The party cross-examining the witness is not concluded by the witness's answer.

> **(2)** EXCLUSION. Evidence of a conviction of a crime or an adjudication of delinquency may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.

> **(3)** ADMISSIBILITY OF CONVICTION OR ADJUDICATION. No question inquiring with respect to a conviction of a

471

crime or an adjudication of delinquency, nor introduction of evidence with respect thereto, shall be permitted until the judge determines pursuant to s. 901.04 whether the evidence should be excluded.[4]

Thus, not all of a witness's convictions are admissible to attack his or her credibility. Rather, the trial court has

---

[4] WISCONSIN STAT. RULE 901.04 reads:

(1) QUESTIONS OF ADMISSIBILITY GENERALLY. Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the judge, subject to sub. (2) and ss. 971.31(11) and 972.11(2). In making the determination the judge is bound by the rules of evidence only with respect to privileges and as provided in s. 901.05.

(2) RELEVANCY CONDITIONED ON FACT. When the relevancy of evidence depends upon the fulfillment of a condition of fact, the judge shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

(3) HEARING OUT OF THE PRESENCE OF A JURY. Hearings on any of the following shall be conducted out of the presence of the jury:

(a) Admissibility of confessions.

(b) In actions under s. 940.22, admissibility of evidence of the patient's or client's personal or medical history.

(c) In actions under s. 940.225, 948.02, 948.025, 948.051, 948.085, or 948.095, or under s. 940.302(2), if the court determines that the offense was sexually motivated, as defined in s. 980.01(5), admissibility of the prior sexual conduct or reputation of a complaining witness.

(cm) Admissibility of evidence specified in s. 972.11(2)(d).

(d) Any preliminary matter if the interests of justice so requires.

(4) TESTIMONY BY ACCUSED. The accused does not, by testifying upon a preliminary matter, subject himself or herself to cross-examination as to other issues in the case.

(5) WEIGHT AND CREDIBILITY. This section does not limit the right of a party to introduce before the jury evidence relevant to weight or credibility.

472

significant discretion to balance the various interests set out in the Rule. Oddly, although Lobermeier argues that his rights were violated by the State's non-compliance with Wis. Stat. § 971.23(1)(f), and his trial lawyer's failure to discover Thornton's four other convictions, Lobermeier does not tell us, and did not tell the trial court, what those other four convictions were. This alone, either under a harmless-error analysis, *see State v. Harris*, 2008 WI 15, ¶ 41, 307 Wis. 2d 555, 577–578, 745 N.W.2d 397, 408 (violation of Wis. Stat. § 971.23 subject to a harmless-error analysis), or under a *Strickland* prejudice analysis, dooms his contention. Simply put, the trial court did not have a chance to assess whether it would have permitted any of the four other convictions to be a basis for the jury's evaluation of Thornton's credibility.[5] Moreover, as the trial court opined in its written decision denying Lobermeier's request for postconviction relief, Thornton's testimony that Lobermeier helped him do some work for Heinitz a week before the crimes cuts both ways: "The failed disclosure/discovery of Mr. Thornton's additional four convictions was completely inconsequential. It was inconsequential because, as things turned out, Mr. Lobermeier didn't contest the fact that Mr. Lobermeier had been at the victim's house the week before the robbery." Additionally, as the trial court also pointed out, Lobermeier's trial lawyer used the fact that Lobermeier had been at Heinitz's house a week before she was attacked to further impeach her identification of Lobermeier as her attacker because she apparently did not like him and, having seen him a week before she was attacked could erroneously conflate the two expe-

---

[5] We have checked the state court site, Wisconsin Circuit Court Access under the name "Donald Thornton." There are twenty-four entries. *See http://wcca.wicourts.gov/pager.do; jsessionid=48F50C6B978795DE39399045A89EA271.render6? cacheId=27BDAC80D27FFD1869054C7F6FF8671A&offset= 0&sortColumn=0&sortDirection=DESC* (last visited May 26, 2012).

riences. On our *de novo* review of the legal issues involved in this aspect of Lobermeier's appeal, we agree.[6]

C. *Lobermeier's decision to not testify.*

■

¶ 18. Lobermeier's final claim on this appeal is that the trial court did not fulfill its responsibilities when Lobermeier's lawyer announced in open court (but not in the jury's presence) that Lobermeier was not going to testify. Here is the pertinent colloquy, which was after the trial court denied Lobermeier's motion to dismiss at the end of the State's case-in-chief:

> THE COURT: [Addressing Lobermeier's trial lawyer], have you and Mr. Lobermeier decide [*sic*] whether he would testify?
>
> [LOBERMEIER'S LAWYER]: Judge, we did review that early yesterday morning. We did have a

---

[6] Lobermeier's labeling the State's non-disclosure of all of Thornton's convictions as a due-process violation adds nothing to the discussion. First, constitutional errors are subject to both the *Strickland* prejudice and harmless-error analyses. *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) (unobjected-to error is analyzed under ineffective-assistance-of-counsel standards, even when error is of constitutional dimension): *State v. Johnson*, 2012 WI App 21, ¶ 14, 339 Wis. 2d 421, 432, 811 N.W.2d 441, 446 (" 'The standard for evaluating harmless error is the same whether the error is constitutional, statutory, or otherwise. An error is harmless if it does not affect the defendant's substantial rights.' ") (quoted source omitted). Second, "[s]imply to label a claimed error as constitutional does not make it so, . . . and we need not decide the validity of constitutional claims broadly stated but never specifically argued." *State v. Scherreiks*, 153 Wis. 2d 510, 520, 451 N.W.2d 759, 763 (Ct. App. 1989). That is the case here.

chance to discuss the number of prior convictions he has had. I think at this point, unless I am mistaken that he does not intend to testify, is that correct Mr. Lobermeier?

[MR. LOBERMEIER]: Yes.

THE COURT: Why don't we do this. Let's just take two seconds while I print out a document for the parties. While we're taking this time off the record, if you want to talk to him for just a couple minutes just to make sure. I'm not encouraging him to change his mind, I just want to make sure he had that opportunity. Let's go off the record.

That was the last direct discussion about whether Lobermeier would testify, although after the trial court and the lawyers resolved other matters on the Record and the jury was released for the day, the trial court asked: "Anything else we need to put on the record in front of the jury."[7] Both lawyers said "No."

¶ 19. "[A] criminal defendant's constitutional right to testify on his or her behalf is a fundamental right." *State v. Weed*, 2003 WI 85, ¶ 39, 263 Wis. 2d 434, 462, 666 N.W.2d 485, 498. Thus, "a circuit court should conduct a colloquy with the defendant in order to ensure that the defendant is knowingly and voluntarily waiving his or her right to testify." *Id.*, 2003 WI 85, ¶ 40, 263 Wis. 2d at 463, 666 N.W.2d at 498.

> Accordingly, in order to determine whether a criminal defendant is waiving his or her right to testify, a circuit court should conduct an on-the-record colloquy with the defendant outside the presence of the jury. The colloquy should consist of a basic inquiry to ensure that

---

[7] Presumably, the trial court meant the next day, when the jury would be back.

> (1) the defendant is aware of his or her right to testify and (2) the defendant has discussed this right with his or her counsel.

*Id.*, 2003 WI 85, ¶ 43, 263 Wis. 2d at 464, 666 N.W.2d at 499.[8] The trial court did not do that here, and in the postconviction hearing recognized its error. As the trial court also recognized, though, there may be a retrospective "evidentiary hearing to determine whether [a defendant] knowingly, voluntarily and intelligently waived the right to testify." *State v. Garcia*, 2010 WI App 26, ¶ 4, 323 Wis. 2d 531, 535, 779 N.W.2d 718, 720. "We review a question of constitutional fact using a two-step process. First, we uphold a circuit court's findings of historical fact unless they are clearly erroneous. . . . Second, we review application of constitutional standards to the historical facts de novo." *Id.*, 2010 WI App 26, ¶ 5, 323 Wis. 2d at 535, 779 N.W.2d at 720. The State has the burden of proof by clear and convincing evidence. *Id.*, 2010 WI App 26, ¶ 14, 323 Wis. 2d at 540, 779 N.W.2d at 722 ("If the State demonstrates by clear and convincing evidence that the defendant knowingly, intelligently and voluntarily waived the right to testify, the issue is resolved. If the State fails to meet its burden, the defendant is entitled to a new trial.").

¶ 20. The trial court held the *Garcia* retrospective hearing, and when the State tried to ask Lobermeier's trial lawyer about his discussions with Lobermeier

---

[8] This does not apply to a defendant's decision to testify. *State v. Denson*, 2011 WI 70, ¶ 63, 335 Wis. 2d 681, 705, 799 N.W.2d 831, 843 ("[C]ircuit courts are not required to conduct an on-the-record colloquy to determine whether a defendant is knowingly, voluntarily, and intelligently waiving his or her right *not* to testify.")

concerning Lobermeier's decision to not testify, the questioning stopped because Lobermeier asserted his lawyer-client privilege. The trial court agreed that the privilege applied, and neither Lobermeier nor his trial lawyer testified at the hearing.[9] The trial court thus indicated it would have to assess the *Weed* factors on "the record that we made on Page 65 of the trial record. I guess any inferences that can be drawn from the lack of any further discussion that takes place on Page 66." We set out earlier the excerpts from the Record to which the trial court referred. Thus limiting the scope of its inquiry, the trial court also heard from the State that Lobermeier has, in a misdemeanor case, decided to testify, and the State contended that that was "evidence that the defendant knew in fact that he could testify since he had done it before and clearly knew that he did not have to testify because in this case he did not testify[.]" Lobermeier's postconviction lawyer argued that the "critical issue" was whether Lobermeier "understood from that discussion that he was —it was his decision whether or not to testify."

¶ 21. The trial court opined:

> I think I can infer from the way that I framed my questions to [Lobermeier's trial lawyer] and the way that [Lobermeier's trial lawyer] framed his question to Mr. Lobermeier that Mr. Lobermeier understood two things. First of all, that he understood that he had a choice. In other words, he had the right to testify if he wanted. and [*sic*] secondly, the choice was up to him."

The trial court also emphasized that it was factoring in its analysis of the "cold transcript" its perceptions from

---

[9] The parties do not discuss and we do not decide whether the trial court's ruling on Lobermeier's assertion of his attorney-client privilege was proper.

the trial: "I'm looking at the two of them at that point and I'm looking for evidence that there's anything going on between client and attorney that's going to require me to make sure there's a clear record."

¶ 22. On our *de novo* review of the legal issue, and based on the trial court's findings and the inferences it drew from its assessment of how Lobermeier and his trial lawyer responded to its questions and interacted with each other, we agree with the trial court that the State has proven by clear and convincing evidence that Lobermeier personally decided to not testify and that he also understood that he could testify if he wished.

¶ 23. We affirm the judgment and the trial court's order denying Lobermeier's motion for postconviction relief.

*By the Court.*—Judgment and order affirmed.