## PROSSER *v.* NORTHERN PACIFIC RAILROAD.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE DISTRICT OF WASHINGTON.

No. 837.    Argued January 16, 17, 1893. — Decided March 5, 1894.

A railroad corporation, which has laid out, built and maintained its railroad
for two miles along the shore of a harbor, below high water mark,
claiming under its charter the right to do so and the ownership of
adjacent lands under tide waters of the harbor, cannot maintain a bill in
equity to restrain a board of commissioners from establishing, pursuant
to statutes of the State, a general system of harbor lines in the harbor,
and from filing a plan thereof.

THIS was a bill in equity, filed December 29, 1891, and
amended May 27, 1892, in the Circuit Court of the United
States for the District of Washington, by the Northern Pacific
Railroad Company, a corporation created and existing under
the laws of the United States, for an injunction to prevent
Prosser and four other persons, constituting the board of
harbor line commissioners of the State of Washington, from
establishing harbor lines and lines of waterways in front of
the city and in the harbor of Tacoma, over the plaintiff's
wharves and lands; and to prevent the Secretary of State of
the State and the clerk of the city from receiving or filing
a plat of such lines made by the commissioners, covering lands
included in a strip two hundred feet wide on either side of the
plaintiff's railroad.

On the day of the filing of the amended bill, a general
demurrer was filed by the defendants, and overruled by the
court; and, the defendants standing upon their demurrer and
declining to answer further, a final decree was entered for the
plaintiff, as prayed for in the bill; and the defendants appealed
to this court.

By the act of Congress of July 2, 1864, c. 217, entitled " An
act granting lands to aid in the construction of a railroad and
telegraph line from Lake Superior to Puget's Sound on the

Pacific Coast by the northern route," the Northern Pacific Railroad Company was incorporated, and authorized to construct and maintain a railroad, " beginning at a point on Lake Superior, in the State of Minnesota or Wisconsin, thence westerly by the most eligible railroad route as shall be determined by said company, within the territory of the United States, on a line north of the forty-fifth degree of latitude, to some point on Puget's Sound;" and for the purpose of aiding in the construction of the railroad, and of a telegraph line, to the Pacific Coast, there was granted to the company "the right of way through the public lands" to the extent of two hundred feet in width on either side of the railroad, as well as every alternate section of the public lands on either side of the line; and it was authorized to take lands within the two hundred feet, "and also any lands or premises that may be necessary and proper for turnouts, standing places for cars, depots, station-houses, or any other structures required in the construction and working of said road;" and it was provided that the railroad should "be a post route, and a military road, subject to the use of the United States, for postal, military, naval and all other government service, and also subject to such regulations as Congress may impose, restricting the charges for such government transportation;" that the acceptance of the terms and conditions of the act should be signified by the company in writing to the President of the United States within two years after its passage; and that, "the better to accomplish the object of this act, namely, to promote the public interest and welfare by the construction of said railroad and telegraph line, and keeping the same in working order, and to secure to the government at all times, but particularly in time of war, the use and benefits of the same for postal, military and other purposes," Congress might, at any time, having due regard to the rights of the company, add to, alter, amend or repeal this act.    13 Stat. 365.

The bill alleged that after the passage of the act, and before March 9, 1865, the company determined upon and selected the general line of its main road from Lake Superior to Puget

Sound; that on March 9, 1865, it duly signified to the President of the United States its acceptance of the act, and therewith presented and filed with the Secretary of the Interior a map showing the general route of its main line; that the general route so selected and designated was by way of the Columbia River to Puget Sound and north of the forty-fifth degree of latitude, and was "the most eligible railroad route for the main line of said railroad and telegraph line from Lake Superior to Puget Sound, and was at the time aforesaid selected and determined upon as such;" and that many years before November 11, 1889, and while the State of Washington was still a Territory, the plaintiff constructed and fully completed, and had since continuously maintained, its railroad from the city of Portland, in the State of Oregon, to the city of Tacoma, in the State of Washington.

The bill alleged that the main line of the plaintiff's railroad, as so constructed and maintained, extended to the eastern boundary of the Tacoma Mill Company's property at a point upon Commencement Bay, an arm or indentation of Admiralty Inlet, near its junction with Puget Sound. The bill, with a map annexed to it, showed that the railroad was laid out for about two miles along the edge of the harbor and in front of the city of Tacoma from a point opposite Fifteenth Street to the termination aforesaid; and that the greater part of the space two hundred feet in width on either side of the railroad, throughout these two miles, was below high water mark. And the bill alleged that the whole of that space between those points was, at the time of the passage of the act of 1864, "a part of the public domain, subject to no rights save those of the United States, and those at that date granted to this plaintiff by said act of Congress."

The bill further alleged that the plaintiff was the owner of the lands next the inner boundary of the right of way aforesaid; "that the plaintiff is also the owner of the littoral and riparian rights, rights of access to deep water, and preference rights of purchase of the tide lands pertaining or belonging to the said lands; that said right of way and said lands are chiefly valuable for their right of access to deep

water and the right to construct landings and warehouses upon the same northward and westward to the navigable waters of Commencement Bay; that many years prior to November 11, 1889, the plaintiff constructed and built upon the lands included within said right of way, and westward and northward thereof into deep water and the navigable water of the said Commencement Bay, wharves, upon which are constructed, in addition to the tracks, switches, turnouts, side tracks, spur tracks, station buildings and freight houses, and the other terminal facilities of its railroad; also warehouses for the accommodation of general commerce and shipping by water, coal bunkers for the accommodation of loading coal into ships and to facilitate the shipment thereof by water, wheat warehouses and grain elevators for the accommodation of the loading of ships with wheat and other grain, and to facilitate the shipment thereof by water, all of which were constructed for the accommodation of commerce and for the loading of ships and to facilitate navigation and all classes of shipment by water; and ever since has continuously maintained and does now maintain and use the same for the benefit of trade, commerce and navigation; that the land hereinbefore described is situated between said plaintiff's right of way and the platted portion of the city of Tacoma, and consists of a high, steep, abrupt bluff, over or across which a railroad could not be properly or safely built; that a railroad built over or across the same would not be practicable to operate so as to reach out and connect with the shipping by water on Commencement Bay; that the space included within the right of way limits designated upon the map hereto attached is the only space between the said bluff and the waters of Commencement Bay upon which the tracks, station buildings and terminal facilities of said plaintiff's railroad could be located, and the only space within the city of Tacoma where said plaintiff could establish such facilities as are necessary to make possible and facilitate transshipment from rail to vessel and from vessel to rail; that the general warehouses, coal bunkers, and wheat and grain warehouses, built and constructed along said harbor

front upon and extending outward from said right of way and said abutting lands, are also necessary adjuncts to the proper operating of said railroad and necessary to aid in and facilitate the said transshipment from rail to vessel and from vessel to rail;" and that a point opposite South Second Street, (about half-way along the aforesaid two miles,) was the first point on Commencement Bay, in the harbor front of the city of Tacoma, reached by the plaintiff's line of railroad, going westward towards the waters of Puget Sound, "where water can be found of sufficient depth to accommodate the navigation of deep-water vessels; and that all of the space included within said right of way of the plaintiff between said point and the point of termination of said plaintiff's line is required for the accommodation of the terminal facilities necessary in the use and operation of the plaintiff's said railroad."

The bill then alleged that the plaintiff's wharves, buildings and other facilities had been constructed at an expense of several millions of dollars; and were indispensable to the performance of the duties imposed upon the plaintiff by its charter; that for the public welfare and for the benefit of commerce and navigation it was necessary that they should be constructed and maintained upon and along said water front, and be used by the plaintiff in connection with its railroad; and that, though in large part below high water mark, they were not obstructions, but were aids, to commerce and navigation.

The bill further alleged that the harbor line commissioners, pretending to act under authority of the statutes of the State, of March 28, 1890, (1 Hill's Laws of the State of Washington, tit. 23, cc. 1, 3,) were about to take final action in the location and establishment of the harbor lines and lines of waterways within the city of Tacoma, in such a way as to include within those lines a part or the whole of the plaintiff's right of way, wharves, warehouses and other improvements, and, unless prevented by injunction, would thereby deprive the plaintiff of the use and benefit thereof, without compensation or due process of law, and would cloud the plaintiff's title.

*Mr. W. C. Jones,* Attorney General of the State of Washington, (with whom was *Mr. William Lair Hill* on the brief,) for appellants.

*Mr. James McNaught* and *Mr. A. H. Garland* for appellee.

MR. JUSTICE GRAY, after stating the case, delivered the opinion of the court.

It may be admitted that the Congress of the United States, while the present State of Washington was a Territory, had the power, in chartering a corporation to construct and maintain a railroad from Lake Superior to the Pacific Coast, to grant to the corporation such title or rights in lands below high water mark of tide waters of the Territory, as might be necessary or convenient for the building, maintenance, use and enjoyment of such structures as might be required for commerce and transportation on the railroad and by sea, and for transferring goods and passengers between the railroad and sea-going vessels. *Shively* v. *Bowlby,* just decided, *ante* 1 ; *In re New York Central & Hudson River Railroad,* 77 N. Y. 248; *In re Staten Island Rapid Transit Co.,* 103 N. Y. 251.

The more serious question, whether the grant of Congress to the Northern Pacific Railroad Company of the right to construct a railroad to the waters of Puget Sound can be construed as authorizing the corporation to lay out its railroad for two miles, below high water mark, along the shore of a harbor, so as practically to monopolize the use of the waters of the harbor, and of the lands under them, cannot properly be decided in this suit, and we express no opinion upon it.

There can be no doubt that a State may, by its legislature, or through a board of harbor commissioners, establish, for the protection and benefit of commerce and navigation, harbor lines in navigable waters, not inconsistent with any legislation of Congress, limiting the building of wharves and other structures upon lands not already built upon. *Yesler* v. *Wash. Harbor Commissioners,* 146 U. S. 646; *Weber* v. *Harbor Commissioners,* 18 Wall. 57; *Atlee* v. *Packet Co.,* 21 Wall.

389, 393; *Commonwealth* v. *Alger*, 7 Cush. 53 : *People* v. *New York & Staten Island Ferry*, 68 N. Y. 71; *State* v. *Sargent*, 45 Conn. 358. Such harbor lines, in order to fulfil their purpose, must be established according to a general system, having in view not only the convenience of approach to the water from the shore, but the effect of the daily ebb and flow of the tide in keeping clear or filling up the harbor. The establishment of general harbor lines, of itself, takes or injures no one's property, and cannot, consistently with the interests of the public, or with the principles of equity, be restrained by injunction. If the State of Washington, or the city of Tacoma, or any public officer or private individual, shall hereafter take active measures, or bring suit, so as to injure or affect the supposed title or rights of the plaintiff, or its use and enjoyment thereof, the dismissal of this bill will not stand in the way of a full and fair trial of the title and rights claimed.

*Decree reversed, and bill dismissed, without prejudice.*

Mr. Justice Harlan and Mr. Justice Jackson were not present at the argument and took no part in the decision of this case.