**BUCKLAND et al. v. LEE, Atty. Gen., et al.**

No. 2916.

District Court, S. D. West Virginia.

Oct. 16, 1931.

Pierce, Smith & Spilman, of Charleston, W. Va., for plaintiffs.

Howard B. Lee, R. Dennis Steed, and W. Elliott Nefflen, all of Charleston, W. Va., for defendants.

Before PARKER and NORTHCOTT, Circuit Judges, and McCLINTIC, District Judge.

NORTHCOTT, Circuit Judge.

This is a suit praying that the provisions of sections 3, 4, 5, 6, 7, 8, 9, 17, 18, 19, 20, 25, and 30 of article 6, of chapter 17, of the Code of West Virginia, in so far as the same purport to apply to certain motor vehicles operated in the transportation and delivery of newspapers, published by one of the plaintiffs, the Charleston Mail Association, a corporation, be declared to be invalid as violative of the Constitution of the United States and the amendments thereto. The vehicles in question are operated by the other plaintiffs, who carry and deliver newspapers by private contracts with the newspaper company over certain routes.

The bill also prays for a preliminary injunction, and, after hearing, for a permanent injunction against the defendants, who are

officials of the state of West Virginia, of the various counties in which the motor vehicles are operated, and members and employees of the State Road Commission of West Virginia, enjoining them from enforcing against the plaintiffs any of the provisions of the sections of the state statute above enumerated, and further enjoining them from prosecuting the plaintiffs under the statute.

The judge of this court, on the filing of the bill, convened a three-judge court, to hear the matter, under section 266 of the Judicial Code as amended (USCA title 28, § 380). Owing to an agreement between counsel that nothing would be done until the hearing, no restraining order was entered.

A hearing was had before this three-judge court, at Charleston, W. Va., on July 28, 1931, and the cause submitted, on the pleadings and an agreed statement of facts, both as to the application for the preliminary and the permanent injunction.

### Finding of Facts.

It appears that the plaintiff the Charleston Mail Association is a corporation engaged in the business of publishing "The Charleston Daily Mail," a daily newspaper of Charleston, W. Va., and the other plaintiffs are engaged in delivering said newspaper under private contract with the newspaper company, over certain fixed routes daily.

That the carriers do not engage in the business of carrying either passengers or freight for hire for the public, and that approximately 40 per cent. of the circulation of the "Mail" is delivered by the plaintiff carriers.

That the plaintiff carriers own their own automobiles and trucks in which the deliveries are made. Some of the carriers using automobiles and others using trucks.

That the carriers had been for some time prior to the institution of this suit operating under the same licenses from the State Road Commission of West Virginia, as are issued to private individuals for automobiles and trucks used solely for private purposes, the classification for automobiles being "A," and for trucks "B."

That the classification for motor vehicles used commercially is class K, vehicles in which class pay a fee double that paid for trucks in class B.

That in making application for the licenses, under which they operated their vehicles, the carriers did not state to the Road Commission for what purpose the vehicles were to be used.

That prior to the institution of this suit some of the carriers were threatened with arrest, and others arrested by members of the West Virginia State Police for operating their vehicles without having secured the proper license therefor. That at conferences had with the Road Commission and the heads of the state police (Department of Public Safety), attorneys for the plaintiffs were informed that licenses would have to be applied for by the carriers under class K, and a larger sum paid for the license than was paid, under classes A and B, and that unless the carriers did apply for the proper licenses and secure a certificate of convenience and necessity they would be prosecuted.

That later, on April 22, 1931, and prior to the bringing of this suit, counsel for the plaintiffs had a conference with various officials of the State Road Commission, including defendant F. O. Saunders, Supervisor of Transportation, at which conference the proposed bringing of this suit was discussed, and that the said Saunders then stated to counsel for the plaintiffs that said motor delivery carriers would be permitted to secure class K licenses by paying the tax required for that class, and without securing a certificate of convenience or necessity, and without complying with certain provisions applicable to public or common carriers. On the occasion of this conference Saunders informed counsel that the Road Commission might hereafter, if it so desired, require the carriers to secure certificates of convenience, and might, if it so desired, regulate them as common carriers. After this conference this suit was instituted.

### Conclusions of Law.

The first question to be considered is whether the present road statute of the state of West Virginia, properly construed, requires the plaintiff carriers, who are admittedly private carriers for compensation, to apply for certificates of convenience and submit themselves to be regulated as common carriers. In other words, does the statute require the private carrier to become, in effect, a common carrier? We do not think the statute can be so construed.

Under the decisions of the Supreme Court, it seems clear that if it required a private carrier to become a common carrier the statute would be unconstitutional. Michigan Public Utilities Commission v. Duke, 266 U. S. 570, 45 S. Ct. 191, 69 L. Ed. 445, 36 A. L. R. 1105; Frost v. Railroad Commission of State of California, 271 U. S. 583, 46 S. Ct. 605, 70 L. Ed. 1101, 47 A. L. R. 457; Smith v. Cahoon, 283 U. S. 553, 51 S. Ct. 582, 75

608

L. Ed. 1264, United States Supreme Court, decided May 25, 1931.

In these cases the state statutes clearly required the private carrier to become a common carrier, or at least to apply for a certificate as such, and to submit to be regulated as a common carrier. Such a situation does not, in our opinion, exist here.

Section 1, art. 6, chapter 17, Code of 1931 (West Virginia), reads as follows: "§ 1. License for Motor Vehicle Required; Application.—No motor vehicle shall be driven upon the public roads, or upon any road or street within any incorporated city, town or village within the State, until the owner first shall have obtained from the state road commission, as herein provided, a license or certificate of registration therefor. An applicant desiring such license or certificate may obtain the same by filing with the commission, by mail or otherwise, a statement setting forth the character of the motor vehicle to be licensed, including the name of the manufacturer, the style, color of body, motor number, type and factory number of such vehicle, the character of the motor power, the name, age, residence and business address of the owner of such vehicle, and the name of the county in which he resides, and shall state whether such vehicle is or is not to be used in the public transportation of passengers or property, or both, for compensation, and, if so used or to be used, the applicant shall so certify, and shall, as a condition precedent to the securing of such license or certificate of registration, obtain a certificate of convenience from the state road commission in the manner hereinafter provided. (1921, c. 112, § 76; Code 1923, c. 43, § 76; 1923, c. 6, § 76; 1925, c. 17, § 76.)"

It will be noted, by reference to the prior act (section 76, c. 17, Acts 1925), that the word "public" is inserted in the 1931 act, thereby clearly relieving those engaged in the *private* transportation of passengers or property for compensation from the necessity of securing the certificate of convenience required in the case of common carriers.

Section 20 of the same article is as follows: "§ 20. Class K. Fee for Motor Vehicles Operated for Transportation of Property, Not Running Over a Regular Route or Between Fixed Termini.—Motor vehicles operated for transportation of property, not running over a regular route or between fixed termini, shall each be charged and pay a fee of double that of trucks not used commercially. (1923, c. 6, § 82, Class H-4; 1925, c. 17, § 82, Class H-4.)"

Statutes must be construed as a whole and where possible must be so interpreted as to give effect to the intention of the Legislature. Here it seems evident that owners of vehicles of the class operated by the plaintiff carriers were not intended by the Legislature, as that intention is expressed by the language of the act, to be compelled to secure certificates of convenience.

It seems plain that the plaintiff carriers cannot lawfully operate under the licenses held by them and for which they applied, that is, under classes A and B, for these classes only include vehicles operated privately, and not for compensation. That class K is the proper class in which the vehicles operated by the plaintiff carriers should be placed, is evident. It is manifestly just that the vehicles operated by these plaintiffs, using the roads as frequently and as constantly as they do, should pay a greater license fee than those properly in classes A and B.

It is true that section 3 (Code 1931, 17-6-3) provides that a certificate of convenience and necessity will be required when the motor vehicle shall be operated over any public road or highway for the transportation of property or passengers for compensation; but section 3 goes on to say that "such classification shall include public livery vehicles, cars for hire or for rent, taxicabs, bus lines, truck lines, and any other transportation of passengers or property for compensation, without regard to whether such operation is between fixed termini or over regular routes or otherwise." In accordance with the well-recognized rule of interpretation, general language coming after a specification of particulars is limited by such specification to things of like character; and when this rule is applied here, the other transportation of passengers or property for compensation means such transportation as public livery vehicles, cars for hire or for rent, taxicabs, bus lines, or truck lines. 25 R. C. L. 996; Swift & Co. v. Columbia Railway, Gas & Electric Co. (C. C. A.) 17 F. (2d) 46, 51 A. L. R. 983. It is true that the holder of a certificate of convenience and necessity is required by section 9 (Code 1931, 17-6-9) to pay the fees prescribed in classes H to K; but it does not follow that every person required to pay the fees in classes H to K is required also to obtain a certificate of convenience and necessity. The correct interpretation of the statute would seem to be that sections 10 to 20 (Code 1931, 17-6-10 to 20), inclusive, prescribe the fees which must be paid for the operation of vehicles; and these sections

have no relation to whether a certificate of convenience and necessity is required or not. In determining whether such certificate is necessary, the court must be guided by sections 1 and 3.

If, however, the language of the statute be fraught with ambiguity, the court, in interpreting same, must give it such construction as is in consonance with the Constitution. This rule is well settled. 25 R. C. L. 1000. It is clear, therefore, that the statute must be construed as requiring certificates of convenience and necessity only in the case of common carriers. Any carrier, therefore, engaged in transportation of property for hire must pay the fee assessed for class K under section 20; but such carrier will be required to apply for the certificate of convenience and necessity prescribed by section 3 only if he is engaged as a common carrier in the public transportation of property.

Again we are not concerned with any differences that may have arisen between representatives of the plaintiffs and employees, officials, or representatives of the road commission prior to the conference of April 22, 1931. At that conference, had with representatives of plaintiffs, it was made clear by the Road Commission that the plaintiff carriers would not be required to apply for or secure certificates of convenience, nor would they be required to submit themselves to regulation as common carriers. This was the situation at the time of the bringing of this suit, and as we see it the rights of the plaintiffs were fully protected.

But even if the statute be construed as requiring a certificate of convenience and necessity from a private carrier and for that reason violative of constitutional provisions, this does not entitle complainants to the injunction prayed. The fee assessed under class K cannot be said to be tied up with any requirement for a certificate of convenience and necessity; and the officials of the state have notified complainants that while they will be required to pay the fee they will not be required to obtain the certificate of convenience and necessity. In other words, it clearly appears from the pleadings and the stipulation as to the facts that the officials of West Virginia are seeking to enforce only the constitutional provision of the statute, and are not seeking to require a certificate of convenience and necessity which would be unconstitutional. It is clear, therefore, that even if the statute requires of private carriers a certificate of convenience and necessity, complainants are not entitled to enjoin the officials of the state, for the good and suffi-cient reason that the officials of the state are not seeking to enforce such unconstitutional provision. The rule is well settled that courts of equity will only grant an injunction to prevent irreparable injury where there is threatened infringement of rights of property on account of unconstitutional legislation. 14 R. C. L. 435; Prosser v. Northern Pacific Railroad Co., 152 U. S. 59, 14 S. Ct. 528, 38 L. Ed. 352; High on Injunctions, §§ 1327 and 1329a. In this case, if the statute be assumed to be unconstitutional, there is no threat of danger or of irreparable injury to complainants, because the officials of the state are not attempting to enforce such provision. As said by the Circuit Court of Appeals in the recent case of Blease et al. v. Safety Transit Company, 50 F.(2d) 852, 856, "it is elementary that a court of equity will not grant an injunction to restrain one from doing what he is not attempting and does not intend to do."

Any prior improper construction of the statute, by rule or representation that may have been made, was corrected by the attitude of the Commission at the conference of April 22, and it is in view of the situation as it existed at the time of the application for the injunction that we must pass on the question.

As was said by Mr. Justice Holmes, in the recent case of Bain Peanut Co. v. Pinson et al., 282 U. S. 499, 51 S. Ct. 228, 229, 75 L. Ed. 482, "The interpretation of constitutional principles must not be too literal. We must remember that the machinery of government would not work if it were not allowed a little play in its joints."

Having in mind the principle that federal courts will not interfere with the management of the internal affairs of a state by its legislative, executive and judicial departments unless the necessity therefor is clearly apparent and is imperative [Liberty Cent. Trust Co. v. Greenbrier College for Women (D. C.) 50 F.(2d) 424], and the principles that a legislative act will not be held unconstitutional unless it is clearly so, we are of the opinion that the act in question here, properly construed, is not unconstitutional.

To recapitulate, we are of the opinion that the relief prayed for should be denied for these reasons: (1) Because, properly interpreted, the statute of West Virginia clearly does not require a certificate of convenience and necessity of private carriers; (2) because, if there be ambiguity in the statute, same must be given an interpretation in accordance with constitutional provisions, as it is not to be assumed that the Legislature

would enact a statute in violation of the Constitution; and (3) because, if the statute be interpreted to require a certificate of convenience and necessity of private carriers, complainants are not threatened with injury on account of this unconstitutional provision, because the officers of the state, prior to the institution of the suit, notified them that no such certificate would be required.

Should the defendants, or any of them, attempt, in the future, to improperly construe the act, the courts would be swift to grant relief.

Application for injunction denied, with costs to be assessed against the plaintiffs.