STATE OF IOWA ex rel. EDWARD L. O'CONNOR, Attorney General, and the STATE CONSERVATION COMMISSION, Appellants, v. OTTO J. SORENSON et al., Appellees.

No. 43692.

FEBRUARY 10, 1937.

Edward L. O'Connor, Attorney General, C. M. Updegraff, Special Asst. Attorney General, LeRoy A. Rader, Asst. Attorney General, for appellants.

Will J. Hayek, for appellees.

KINTZINGER, J.—The land in dispute is a 100-foot strip lying between the west bank of the Iowa River and the pavement known as highway No. 6, and is located between the Iowa Avenue Bridge and the Burlington Street Bridge in Iowa City, Iowa. Each party contends that the boundary line of the property is the line known as the high-water mark of the Iowa river on the westerly side thereof, and the dispute herein relates to the location of said high-water mark.

Plaintiff-appellant contends that the boundary line of the properties is the *present* high-water mark on the west side of the river.

Defendants-appellees contend that the Iowa River had two high-water marks, the first being one existing prior to the construction of a dam across the river just south of the Burlington Street Bridge at Iowa City, in 1905, and the second being a new high-water mark created by a raise in the level of the river caused by the construction of said dam.

Appellees also deny the location of the present high-water mark as contended for by appellant, and deny that the new high-water mark is the easterly boundary of their property.

Appellant claims to be the owner of the bed of the Iowa River up to the present high-water mark on the westerly side thereof. The defendants deny such ownership in the State, but claim ownership of the property in question, and ask to have title therein quieted in them.

The lower court found that the defendants, Otto J. Sorenson, Ira L. Sorenson, and Aral C. Sorenson, are the owners of the real estate in dispute, and that neither the plaintiff nor the other defendants named have any right, title or interest therein. The State appeals.

I. The undisputed evidence shows that the State constructed a dam across the Iowa River in 1905 just below the Burlington Street Bridge, which is located about one block south of the property in dispute. The testimony also shows that the construction of the dam raised the level of the river 8 or 10 feet, resulting in an alteration raising the original high-water mark on the westerly side of the river, which plaintiff contends is now shown in State's Exhibits 25 and 27, as being an elevation of 56 feet above the Iowa City datum.

The evidence shows that a building owned by the defendants and known as the Midway Inn is situated along the east side of highway No. 6, and that the 56 foot contour line shown on Exhibits 25 and 27 is considerably east of the east edge of the paved highway.

Defendants contend that they are, and that their predecessors in title were, the owners of the land in question easterly of highway No. 6 to the high-water mark of the Iowa River as it existed prior to the construction of the dam.

Certain improvements known as the Midway Inn and an artificial fill adjoining were placed upon the property claimed by the defendants, in 1927, no part of which they claim extends easterly of the present high-water mark on the west side of the river.

There is also a dispute as to the location of the *present* high-water mark on the west side of the river along the property in question.

Dr. Shimek, a civil engineer and professor of botany at the State University, who was familiar with the location in question for over fifty years, and Professor Holt, an expert civil engineer and a professor in the Civil Engineering Department at the State University at Iowa City, both say that, from an examination of the grounds and soil on the property in dispute, in 1921

and 1933, and from the lack of vegetation therein, at the Inn, and at an artificial fill adjoining, they could locate the present high-water mark at the place in dispute. They say that the high-water mark is a line delineating the bed of the stream from the bank, and that the bed of the stream is the area which the continued action of the water caused to have an appearance distinct from that above a high-water mark in the matter of vegetation and character of the soil. They fixed the high-water mark of the river in 1921 and 1933 along the property in dispute at an elevation of 56 feet above the Iowa City datum, measuring from the Iowa City datum in determining said elevation. Other matters shown to exist in the area in question are also located by other contour lines on the same maps.

One of the controverted questions herein relates to the location of the present high-water mark along the property in question. An accepted definition of "high-water mark" is set out in the case of City of Cedar Rapids v. Marshall, 199 Iowa 1262, loc. cit. 1264, 203 N. W. 932, 933, where this court said:

"The term 'ordinary high-water mark' has been frequently defined by this and many other courts. It is not the line reached by unusual floods, but it is the line to which high water ordinarily reaches. [Citing cases.] ' "High-water mark" means what its language imports,—a water mark. It is co-ordinate with the limit of the bed of the water; and that, only, is to be considered the bed which the water occupies sufficiently long and continuously to wrest it from vegetation, and destroy its value for agricultural purposes.' * * * Bennett v. National Starch Mfg. Co., 103 Iowa 207, 72 N. W. 507; * * * Houghton v. C., D. & M. R. Co., 47 Iowa 370."

The high-water mark, therefore, may be defined as the line to which high water ordinarily reaches and is not the line reached by the water in unusual floods. It is that line below which the soil is unfit for vegetation or agricultural purposes.

Appellees contend that because several large trees were standing in a north and south line east of the high-water mark located by appellant's witnesses, their testimony has been impeached, on the theory that if no vegetation could grow between the high and low water marks, trees of the size found in the line referred to could not have grown, and consequently the high-water mark must have been east of the trees.

Dr. Shimek, one of the most eminent botanists in the country, and for many years professor of Botany at the State University, says that trees of the character and size found along the area in question could easily have gained a foothold and grow below the high-water mark, notwithstanding the fact that smaller vegetation might not grow between the high and low water marks.

Both Dr. Shimek and Professor Holt observed the character of the vegetation along the bank of the stream, and judging from it, testified that the present high-water mark is at an elevation 56 feet above the Iowa City datum. They also testified that the high-water mark along the property in question practically intersects the center of the Inn, north and south, and that the east end of the Inn is approximately 43 feet east of the east edge of the paving known as highway No. 6.

Professor Holt and Dr. Shimek testify that the bed ''is an area which, by action of the water * * * renders the land unfit for agricultural purposes and * * * of ordinary vegetation growing in said locality except such as will grow practically in water.''

Without setting out other evidence offered in behalf of appellant in detail, it is sufficient to say that several other witnesses, including two engineers, corroborate the testimony of Professor Holt and Dr. Shimek.

Mr. C. E. Sayre, an experienced civil engineer, testified that plaintiff's Exhibit 25 is a contour map, and that working therefrom he has run a line on elevation 56, and that any other surveyor could locate it from the description given, which is as follows:

''Beginning at a point where said contour line intersects the face of the south wing-wall (of the old Bridge abutment at Iowa Street), which point is 104 feet south of and 1,598.5 feet west of the Old Capitol building in Iowa City, thence S 21° 18½' W 31.7 feet, thence S 10° 00½' W 25.0 feet, thence S 7° 21' E 15.6 feet, thence S 11° 43½' E 27.0 feet, thence S 1° 34' W 36.5 feet, thence S 6° 55' E 33.2 feet, thence S 3° 38' E 31.6 feet, thence S 2° 33' E 45.0 feet, thence S 1° 06' E 52.0 feet, thence S 13° 08' E 30.8 feet, thence S 5° 26½' E 21.1 feet. * * * The contour line above described intersects the north and south boundary lines of the tract in issue and crosses said tract.''

There was a conflict in the evidence as to the location of the present high-water mark. Several witnesses for the appellees testify that the entire building known as the Inn and the area some distance east of it are located above the present high-water mark. This is purely a question of fact.

It is our conclusion, after a careful consideration of all the evidence in the case, that the present ordinary high-water mark of the Iowa River along the property in question is that as shown by the contour line marked elevation 56 as shown on the contour maps referred to as Exhibits 25 and 27.

It is also our conclusion from the undisputed evidence that the high-water mark existing prior to the construction of the dam was 8 or 10 feet lower than the present high-water mark, which would necessarily place the old high-water mark at an elevation of 47 or 48 feet above the Iowa City datum. It is, therefore, our conclusion that the high-water mark existing prior to 1905 is at a point some distance easterly of the building known as the Midway Inn and the parking space adjoining.

II. Appellants contend, however, that the present boundary line has existed for such a length of time that the State has title and right of possession of the property in dispute up to the present boundary line by prescription.

The evidence shows that the construction of the dam just below the Burlington Street Bridge in 1905 caused the level of the river at the point in question to rise from 8 to 10 feet, thus altering the high-water mark on the west bank of the river. The construction of this dam made a permanent change in the high-water mark along the west bank of the river north of the dam, extending it further west.

Appellees contend that their title to the land on the easterly edge of the tract conveyed to them, extends to the westerly line of the *original highwater mark* as it existed prior to the construction of the dam. Appellant contends that the dam was constructed more than twenty years prior to the litigation involved herein; that it is a permanent structure across the river, and that the effect of its construction was to raise the water level 8 or 10 feet and consequently extend the high-water mark along the property in question beyond the original high-water mark.

It is a well settled rule of law that the high-water mark of a navigable stream is the dividing line between the bed of the river and the private property adjoining. McManus v. Carmichael,

3 Iowa 1; Shortell v. Des Moines Elec. Co., 186 Iowa 469, 172 N. W. 649; Wenig v. Cedar Rapids, 187 Iowa 40, 173 N. W. 927; City of Cedar Rapids v. Marshall, 199 Iowa 1262, 203 N. W. 932; Barney v. Keokuk, 94 U. S. 324, 24 L. Ed. 224; Prosser v. Northern Pac. R. Co., 152 U. S. 59, 64, 14 S. Ct. 528, 38 L. Ed. 352; Lowndes v. Huntington, 153 U. S. 1, 14 S. Ct. 758, 38 L. Ed. 615; Scranton v. Wheeler, 179 U. S. 141, 178, 21 S. Ct. 48, 45 L. Ed. 126.

Appellant contends that where a dam is constructed as a permanent structure across a river, and has existed for such a length of time as to give the State title to the bed of the river, as changed, by prescription, the new boundary line created by the construction of the dam will be considered as a substitute for the boundary line existing prior thereto. While we find no Iowa cases directly in point upon this question, it seems to be the rule generally adopted in other jurisdictions, that riparian rights will be acquired along the artificial channel of a natural stream. The construction of the dam created a permanent change in the Iowa River. This change in the river and the resulting change in the high-water mark between it and the private property adjoining has existed for more than twice the period necessary to give the State title thereto by prescription, and the new high-water mark created by the construction of the dam becomes the new boundary line.

Appellees contend, however, that their rights are derived by deed from their grantors and their predecessors, whose title is traced back to the Government. There might be some merit to this contention if the property conveyed to the defendants and to their immediate grantors had described the easterly boundary line of the property conveyed by metes and bounds, or as extending easterly to the river as it existed prior to 1905. But the conveyance to defendants was executed in 1927, long after the construction of the dam and artificial, but permanent, change in the boundary line. The westerly part of the property is correctly described, but in describing the easterly line, the conveyances read *"thence east to the Iowa River."* The Iowa River at the time appellees acquired the land in question, and at the time some of their predecessors acquired it, *was in its present location.* But the alteration in the elevation of the river and the high-water mark thereon was made long prior thereto. This alteration had existed uninterruptedly for over 20 years prior to the acquisi-

tion of said property by the defendants; the rights of the State in the bed of the river, as changed by its alteration, were, therefore, acquired by prescription. State ex rel. Thompson v. Parker, 132 Ark. 316, 200 S. W. 1014; Diana Shooting Club v. Lamoreux, 114 Wis. 44, 89 N. W. 880, 91 Am. St. Rep. 898; Kray v. Muggli, 84 Minn. 90, 86 N. W. 882, 54 L. R. A. 473, 87 Am. St. Rep. 332; Taggart v. Jaffrey, 75 N. H. 473, 76 A. 123, 28 L. R. A. (N. S.) 1050, 139 Am. St. Rep. 729; Johnson v. Boorman, 63 Wis. 268, 22 N. W. 514; Belknap v. Trimble, 3 Paige (N. Y.) 577; Lampman v. Milks, 21 N. Y. 505; Roberts v. Roberts, 55 N. Y. 275; Huntington v. Asher, 96 N. Y. 604, 48 Am. Dec. 652; Prescott v. White, 21 Pick. (Mass.) 341, 32 Am. Dec. 266; Smith v. Youmans, 96 Wis. 103, 70 N. W. 1115, 37 L. R. A. 285, 65 Am. St. Rep. 30.

In State ex rel. Thompson v. Parker, 132 Ark. 316, 200 S. W. 1014, 1016, the court says:

"When the waters of natural navigable lakes in this state are extended by artificial means, so as to cause the land of riparian owners to be flooded, without their consent, and this condition is not merely temporary, but is continued for a sufficient length of time for the standing waters to produce a distinctive new high-water mark for the waters of the lake bed, this gives the state, as the owner of such lake bed, the possession of the lands so covered to the high-water mark. Such possession is open, for a complete submergence of one's lands in this manner could not escape observation, and, if the owner is powerless to remove the cause and to restore the lands to their former condition, such possession is also adverse, and if it continues for seven years or more without interruption the state acquires the title to the lands so submerged, for, in such case, they have become a part of the natural lake bed. Such is the case here, and, as already observed, the state has acquired title by prescription or limitation. Johnson v. Lewis, 47 Ark. 66, 2 S. W. 329; Clay v. Penzel, 79 Ark. 5, 94 S. W. 705; Choctaw, O. & G. Rd. Co. v. Rice, 7 Ind. T. 514, 104 S. W. 819; Medlock v. Owen, 105 Ark. 460, 151 S. W. 995."

In Diana Shooting Club v. Lamoreux, 114 Wis. 44, 89 N. W. 880, 884, 91 Am. St. Rep. 898, the court says:

"By operation of the statute of limitations the artificial con-

dition is thus stamped with the character of a natural condition, and the title to the lands covered by the waters of the lake is deemed to have passed from private ownership to the same trust as that of lands covered by the waters of natural navigable lakes. The state, and private owners, as well, of lands affected by the artificial condition, may enforce the maintenance of that condition.''

In Kray v. Muggli, 84 Minn. 90, 86 N. W. 882, 884, 54 L. R. A. 473, 87 Am. St. Rep. 332, the court says:

''Passing the question as to comparative equities, we come directly to the main controversy in the case, namely, what right in law or equity has the plaintiff to insist upon the continued maintenance of the dam? The right to maintain it on the part of the mill company was acquired by prescription. The mill company, in erecting it, obtained no express grant to do so from the riparian owners; but the erection and maintenance thereof for more than 40 years created a prescriptive right to continue its maintenance perpetually.''

In Taggart v. Jaffrey, 75 N. H. 473, 76 A. 123, 125, 28 L. R. A. (N. S.) 1050, 139 Am. St. Rep. 729, the court says:

''The stream had been changed in a manner to indicate that the alteration was permanent. There are prescriptive rights. It ran in this way for more than twice the period necessary to the presumption of a grant, before the plaintiff purchased his tract of land.''

This rule also has support in the other cases cited.

As the State has uninterruptedly and openly occupied the bed of the river in its present altered condition since 1905, we are constrained to hold that it has obtained title thereto by prescription to the present high-water mark thereon as altered by the construction of the dam.

We are also constrained to hold that the defendants' deeds to the property speak as of the time they were executed in 1927 and 1930. At that time the boundary line between defendants' property and the river was the changed high-water mark created by the construction of the dam.

Where a deed or plat omits to state the length of the lot, but shows the same as extending from a street to the river, the high-

water mark of the river must be treated as the limit of the lot. Therefore, as the property in this action was described as extending east to the Iowa River, it conveyed nothing beyond the present high-water mark on the bank of the river. Wenig v. City of Cedar Rapids, 187 Iowa 40, 173 N. W. 927.

For the reasons hereinabove expressed, it is our conclusion that the boundary line should have been fixed by the court as hereinabove indicated, and that the high-water mark as so fixed is the boundary line between defendants' property and the bed of the river; and that each party have its title quieted in that part of the property in question up to the boundary line as herein established.

As the decree of the lower court gives part of the property in dispute as hereinabove determined to appellees, it is ordered that each party pay their own costs on appeal, and one-half of the remaining costs.

For the reasons hereinabove expressed, the decree of the lower court is hereby reversed and the case remanded for a decree in harmony herewith.—Reversed and remanded.

DONEGAN, PARSONS, SAGER, ANDERSON, HAMILTON, and STIGER, JJ., concur.