COURT OF APPEALS
DECISION
DATED AND FILED

October 3, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1449-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2020CF1459

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

HENRY L. WATSON,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: DAVID L. BOROWSKI, Judge. *Affirmed*.

Before White, C.J., Donald, P.J., and Dugan, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM. Henry T. Watson appeals from a judgment of conviction for homicide by negligent handling of a dangerous weapon following a jury trial and an order denying his motion for postconviction relief. In his brief, Watson asserts, in his statement of issues, that "[t]he [c]ircuit [c]ourt did not properly instruct the jury on perfect self-defense[.]" He also states that trial counsel was ineffective because he "failed to challenge the constitutionality of the statute. His trial counsel failed to properly object to the [j]ury's verdict." We reject Watson's arguments, and thus, we affirm the judgment of conviction and the order denying the postconviction motion.

## BACKGROUND

¶2      On April 6, 2020, Milwaukee police officers responded to a report of a shooting in the parking lot of an auto parts store in the City of Milwaukee. They found Thomas Jones,[1] who told them that he had been shot in his lower abdomen and right flank. The officer did not find a weapon on Jones and he was transported to a hospital. Officers found a second victim, Javon Lattimore, lying next to a red Chevy Impala that was lifted up on a jack—he had been shot four times and died.

¶3      A witness identified Watson in a photo array and told police that she saw him talking to Lattimore and Jones, pulling out a handgun, and firing it seven or eight times in the direction of the red Chevy Impala, shooting Lattimore and Jones. Jones told police that he met Watson the day before the shooting, while

---

[1] Pursuant to WIS. STAT. RULE 809.86 (2021-22), we refer to the victim in this matter using a pseudonym. All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

2

working on cars at the store. On the day of the shooting, he got into an argument with Watson and as he was walking toward Watson, Watson pulled out a gun, Jones put his hands up in the air, and Watson fired shots at both Lattimore and Jones, which hit both of them. Watson told police that he got into an argument with Jones and as Jones approached him, Jones reached into his pocket. Watson said that he believed that Jones was armed, so he pulled out his gun and shot at Jones. Security cameras captured the incident.

¶4     The State charged Watson with one count of first-degree reckless homicide, use of a dangerous weapon as to Lattimore, and first-degree reckless injury, use of a dangerous weapon as to Jones. The matter proceeded to a four-day jury trial that started on January 4, 2021. The State was unable to secure Jones' appearance to testify as a witness. Officers testified regarding what they saw at the scene of the shooting and their investigation. They found ten fired 9mm cartridge casings, multiple bullets, and bullet damage to the area around the store. Police concluded that the shooter took the gun with him and they found no evidence to suggest that Jones or Lattimore had a gun that day.

¶5     About four hours after the shooting, a detective received a phone call from Watson. Watson told the detective that he made a mistake and wanted to turn himself in with the gun he used to shoot at Jones. When officers went to meet Watson, he gave them his firearm and ammunition, was cooperative, gave a DNA sample, and made a full statement to police. As a result of their investigation, the officers concluded that the 9mm casings, bullets, and bullet jackets found at the scene were all fired from Watson's firearm.

¶6     The jury saw surveillance video from the store which captured the incident and the shooting. The video showed that as Jones approached a man in

3

dark clothing, Jones first put his left hand up and then down, he almost immediately put both hands up, and then turned and ran away from the man in the dark clothing. As he ran, the man in the dark clothing raised his right arm and pointed it at Jones, which was consistent with shooting at Jones as he ran away toward the red Chevy Impala. The video from the gas station nearby showed Jones running from the store and trying to flag down people to get help.

¶7     An eyewitness to the shooting testified that she had gone to the store on the day of the shooting in the red Chevy Impala, which was her boyfriend's car, to get it fixed. The car was jacked up in the parking lot and she and her boyfriend sat inside the store. She did not see the two men near the red Chevy Impala with any firearm or weapon and she heard the man under the car tell the other man to go tell Watson to move along. She testified that when the man went over to Watson, Watson pulled out a gun, shot in the air once or twice, and then shot the man. She saw Watson shoot at least seven times. She identified Watson as the shooter in a photo array and also at trial.

¶8     Watson testified that he was at the store parking lot on the day of the shooting trying to get work by handing out his business cards and talking to people. He saw Jones and Lattimore talking, while Lattimore was working on the red Chevy Impala—he saw Lattimore come from under the car and grab some tools. Then Jones approached Watson—upset, with his left hand raised, and his right hand in his pocket. Watson testified that as Jones walked toward him, Jones was "yelling" at Watson telling him to "move the fuck around." Jones "had his left hand in his pocket," then "was lifting it up" and showed Watson "something black," which Watson "thought was a gun" because Jones said, "I'm going to fuck your ass up." Watson then pulled his own gun out of his pants pocket because he thought that he was in danger and fired his weapon. He testified that Jones

"turned" and "deviated to the left as if he was about to try to turn around and return fire," so he "continued to fire" until Jones was behind the red Chevy Impala. Watson stated that he ran back to his own car so he would not get shot. Watson further testified that later that day someone told him that two people had been shot in the store parking lot. He called the police, told him that he was involved, was cooperative, and was shocked when police told him that someone under the car had died in the shooting.

¶9 At the close of the evidence, the parties agreed that for count one—first-degree reckless homicide, use of a dangerous weapon, of Lattimore—the jury should be instructed on the lesser-included offense of second-degree reckless homicide, use of a dangerous weapon. The next morning trial counsel also requested an instruction for the lesser-included offense of homicide by negligent handling of a dangerous weapon—the circuit court granted the request. As a part of the instructions regarding count one, the circuit court specifically instructed the jury on self-defense:

> There is evidence in this case that [Watson] was acting in self-defense as to [Jones]. The fact that the law may allow [Watson] to use force in self-defense as to [Jones], does not necessarily mean that the causing of harm to [Lattimore] was lawful. You must consider the law of self-defense in deciding whether [Watson's] conduct as to [Jones] was criminally reckless conduct, … but [Watson] does not have a privilege of self-defense as to [Lattimore].[2]

¶10 The jury rendered verdicts of guilty of the lesser-included offense of homicide by negligent handling of a firearm on count one related to Lattimore, and not guilty on count two related to Jones. Trial counsel moved the court for

---

[2] The circuit court also read the jury the standard jury instruction regarding self-defense as it related to Watson's use of force as to Jones in count two.

"judgment of acquittal on Count two and judgment notwithstanding the verdict on Count one." The circuit court stated that it would "enter a judgment on both of the verdicts as rendered by the jury[.]"

¶11 At sentencing, the circuit court described the video evidence as showing that during a confrontation between Watson and Jones, while Jones had both arms up, Watson fired shots at him that killed an "innocent person, [Lattimore.]" After discussing the reasons for imposing the sentence, the court sentenced Watson to the maximum sentence on count one of ten years of imprisonment, consisting of five years of initial confinement and five years of extended supervision.[3]

¶12 Watson filed a postconviction motion seeking "an order vacating the judgment of conviction and to dismiss the case." He alleged that trial counsel performed deficiently, first, because "[h]e did not object to the verdict of guilty" on the count of homicide by negligent handling of a dangerous weapon, as he should have. He argues that trial counsel was deficient for failing to object because "he was found not guilty by self-defense on the count of [first-degree] reckless injury use of a dangerous weapon"—count two—and because "he unintentionally kill[ed]" Lattimore, while "lawfully defending himself from [Jones]." Watson asserted that he had no intent to kill Lattimore, and therefore, he cannot be criminally liable because he cannot be criminally negligent "if he was found to be acting lawfully by self-defense." Second, he alleged that trial counsel was deficient by failing "to question the constitutionality of the statutes."

---

[3] We note that Watson does not challenge the sentence imposed by the circuit court.

6

¶13    In a written decision and order, the circuit court denied Watson's motion without a hearing.

## DISCUSSION

### I.    Watson could not claim self-defense as to count one

¶14    At the outset, we note that Watson makes a convoluted argument that because he was lawfully intentionally acting in self-defense against Jones, that he cannot be found guilty of negligently killing Lattimore. He states that:

> The principal question for the jury at the end of the trail [sic] was not whether Lat[t]imore had been killed or who had done it. Rather, the question came down to intent: what was Watson's intent when he pulled his gun out, and what was his intent when he discharged his gun? If Watson killed Lat[t]imore while acting lawfully in self-defense towards [Jones], then no crime was proven.
>
> Central to Watson's defense was his testimony that demonstrated why he pulled out his gun and discharged his gun towards [Jones] and without any intent in [striking] Lat[t]imore.

Watson further argues that:

> Watson acted lawfully in self-defense and cannot be found to be criminally negligent at the same time …. An element of homicide by negligent handling of a dangerous weapon is the actor is actin[g] in a criminally negligent manner and by the way of self-defense jury instructions, lawfully action in self-defense and criminally negligent actions are mutually exclusive of each other and cannot co-exist at the same time.

¶15    The problem with Watson's argument is that, at best, he is asserting that he was acting in self-defense when shooting at Jones because he believed that Jones had a firearm and was going to shoot him. He does not allege that Lattimore was in any way threatening him at any time. Rather, he states, "Watson's sole

issue in this case is whether he unintentionally kills a third-party [Lattimore] while using a justifiable force in self-defense is [he] criminally liable for the injury to the third party." He further argues that if Watson killed Lattimore, while acting lawfully in self-defense towards Jones, then no crime was proven.

¶16 We conclude that even if Watson could claim he acted in self-defense, based on his assertion that he believed that Jones had a gun and was going to shoot him, he could not claim that he acted in self-defense as to Lattimore. WISCONSIN STAT. § 939.48(3) clearly limits the privilege of self-defense where a defendant's conduct results in injury to an unintended third person. The statute in relevant part provides that:

> The privilege of self-defense extends not only to the intentional infliction of harm upon a real or apparent wrongdoer, but also to the unintended infliction of harm upon a 3rd person, *except that if the unintended infliction of harm amounts to … first-degree or 2nd-degree reckless homicide [or] homicide by negligent handling of a dangerous weapon … the actor is liable for whichever one of those crimes is committed.*

*Id.* (emphasis added).[4]

¶17 As noted, here Watson was charged with one count of first-degree reckless homicide, use of a dangerous weapon for shooting and killing Lattimore. The jury found him guilty of the lesser-included offense of homicide by negligent handling of a firearm as to Lattimore. Watson acknowledges that he fired the gun to protect himself from Jones—not Lattimore. Therefore, the plain language of WIS. STAT. § 939.48(3) bars Watson from asserting self-defense to avoid

---

[4] We note that the statute specifies other crimes that are not relevant to this case.

conviction for homicide by negligent handling of a firearm as to Lattimore—a "3rd person."

¶18  We conclude that, considering the facts of this case, including the fact that he was convicted of homicide by negligent handling of a firearm, because Watson offers no Wisconsin[5] legal authority demonstrating the viability of his self-defense claim that he advances, he fails to show that he was entitled to claim self-defense as to the negligent handling of a firearm charge in count one involving Lattimore.  Thus, as we next discuss, each of his other claims, which are based on his claim that he is entitled to a privilege of self-defense as to his shooting Lattimore, are without merit.[6]

---

[5] We note that Watson cited to cases from other jurisdictions, but we conclude that those cases are inapposite to Wisconsin law.  We also note that the State argued in its brief that the cases from other jurisdictions were inapposite to Wisconsin law.  Watson does not respond to the State's argument in his reply brief, and thus, we consider that he concedes that the State is correct.  *See **United Coop. v. Frontier FS Coop.***, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (holding that an appellant's failure to dispute respondent's arguments in a reply brief may be taken as a concession).

[6] We also note that Watson acknowledges that trial counsel did not object to the jury instructions that the circuit court gave to the jury.  Thus, as our supreme court has stated, "the court of appeals has no power to reach an unobjected-to jury instruction because the court of appeals lacks a discretionary power of review."  ***State v. Trammell***, 2019 WI 59, ¶25, 387 Wis. 2d 156, 928 N.W.2d 564.  However, we address the jury instruction for the purpose of resolving Watson's additional arguments.

9

**II.    Watson's claims that the circuit court did not adequately instruct the jury on perfect self-defense and that trial counsel was ineffective for not objecting to the instructions**

¶19    On appeal, Watson rephrases his claims that he asserted in his postconviction motion,[7] now stating that the circuit court "did not adequately instruct the jury on perfect self-defense," "the court did not give the jury proper instructions about criminal negligence and acting lawfully cannot coexist," and trial counsel was ineffective when "he did not object to jury instructions which failed to inform the jury properly."

¶20    These allegations are based on Watson's argument that because he was lawfully intentionally acting in self-defense against Jones, that he cannot be found guilty of negligently killing Lattimore. We concluded above that pursuant to WIS. STAT. § 939.48(3), Watson could not claim that he acted in self-defense as to Lattimore. Thus, we conclude that the circuit court properly instructed the jury that Watson did not have a privilege of self-defense as to Lattimore.

¶21    A defendant must show two elements to establish that his or her counsel's assistance was constitutionally ineffective: (1) counsel's performance was deficient; and (2) the deficient performance resulted in prejudice to the defense. *See State v. Balliette*, 2011 WI 79, ¶21, 336 Wis. 2d 358, 805 N.W.2d 334. We review independently, as a matter of law, whether the facts demonstrate

---

[7] In his postconviction motion, Watson alleged that trial counsel performed deficiently because "[h]e did not object to the verdict of guilty" on the count of homicide by negligent handling of a dangerous weapon, as he should have because "he was found not guilty by self-defense on the count of [first-degree] reckless injury use of a dangerous weapon" and because "he unintentionally kill[ed]" Lattimore while "lawfully defending himself from [Jones]" Watson had no intent to kill Lattimore, and therefore, he cannot be criminally liable because he cannot be criminally negligent "if he was found to be acting lawfully by self-defense."

10

ineffective assistance of counsel. *See **State v. Pico***, 2018 WI 66, ¶13, 382 Wis. 2d 273, 914 N.W.2d 95.

¶22 Because, as noted, the jury instructions were proper, trial counsel could not have been deficient. It is not deficient performance for trial counsel to not pursue futile arguments.[8] *See **State v. Cameron***, 2016 WI App 54, ¶27, 370 Wis. 2d 661, 885 N.W.2d 611 ("It is not deficient performance for counsel not to make a pointless objection."); ***State v. Toliver***, 187 Wis. 2d 346, 360, 523 N.W.2d 113 (Ct. App. 1994) (stating that counsel is not ineffective for failing to pursue futile arguments).

### III. Watson has not shown that WIS. STAT. § 939.48(3) is unconstitutional

#### A. Watson did not adequately plead his claim

¶23 In his motion for postconviction relief, Watson alleged that trial counsel was ineffective in failing "to question the constitutionality of the statutes." He also asserted that:

> The statute of self-defense [WIS. STAT. § 939.48(3)] is unconstitutional because it puts an impossible burden on anybody that is acting in self-defense. It creates that burden by stating that self-defense is exempted if the unintended infliction of harm to a third-party amounts to the crime of homicide by negligent handling of a dangerous weapon. This puts an unconstitutional burden on anybody that is lawfully engaged in self-defense and then knowing where third parties are, even if they are concealed. What this statute accomplishes is it punishes a person acting in

---

[8] We also note that Watson did not allege that trial counsel was ineffective for not objecting to the jury instructions that the circuit court gave to the jury. "The general rule is that issues not presented to the circuit court will not be considered for the first time on appeal." ***State v. Caban***, 210 Wis. 2d 597, 604, 563 N.W.2d 501 (1997) (citation omitted).

the law that they could not conceivably predict. It's [predicated] upon the result and not the act.

¶24 The circuit court adopted the State's argument that Watson's claim was deficiently pled. It incorporated the State's argument into its written decision:

> In the instant case, [Watson] has failed to meet his burden in several ways. First, [Watson] never clearly alleges how the statute is unconstitutional or what constitutional provision it violates, "[h]e merely asserts that this is the case." **State v. Scherreiks**, 153 Wis. 2d 510, 520[, 451 N.W.2d 759] (Ct. App. 1989). "Simply to label a claimed error as unconstitutional does not make it so." **State v. Lobermeir**, [2021 WI App 77, ¶17 n.6, 343 Wis. 2d 456, 821 N.W.2d 400]. This court "need not decide[] the validity of [constitutional] claims broadly stated but never specifically argued." **Id.**
>
> In the instant case, [Watson] claims that [WIS. STAT. §] 939.48(3) is unconstitutional because it requires those acting in self-defense to know where third parties are during the incident. He does not state which constitutional provisions this violates, or how this statute stands in contrast to a constitutional prohibition. Rather, he simply makes a conclusory claim and thus should be denied pursuant to **State v. Allen**, [2004 WI 106,] 274 Wis. 2d 568, [682 N.W.2d 433].

¶25 We agree with the State's argument, adopted by the circuit court, and conclude that Watson did not adequately plead his claim that trial counsel was ineffective for not challenging the constitutionality of WIS. STAT. § 939.48(3).[9] Although we need not address Watson's belated allegations in his reply brief to

---

[9] We note that the circuit court did comment that "[a]gain, [Watson] seeks to remedy the deficiencies of his motion by raising new claims in his reply brief." In his reply brief, Watson argued that the statute was unconstitutional because it was vague and because it was an *ex post facto* law. However, as our supreme court in **State v. Allen**, 2004 WI 106, ¶27, 274 Wis. 2d 568, 682 N.W.2d 433, said: "[W]e will review only the allegations contained in the four corners of Allen's postconviction motion, and not any additional allegations that are contained in Allen's brief."

the circuit court that the statute was vague and was an *ex post facto* law, we do so briefly to be complete.

### B. Watson did not adequately allege that WIS. STAT. § 939.48(3) was unconstitutionally vague

¶26 Watson alleges that WIS. STAT. § 939.48(3) is unconstitutionally vague because it does not provide "fair notice of what type of conduct is proscribed." His argument appears to challenge the statute as being vague as applied to him, asserting that when he shot Jones, he believed that he "was acting in self-defense in a lawful manner," and therefore, he could not be acting "in a criminal[ly] negligent manner" when he shot and killed Lattimore.

¶27 The legal standards governing a vagueness challenge are well settled. This court presumes that the statute is constitutional and "we review it with an eye towards preserving its constitutionality." *State v. Hibbard*, 2022 WI App 53, ¶23, 404 Wis. 2d 668, 982 N.W.2d 105. "We will not invalidate a statute on vagueness grounds 'if any reasonable and practical construction can be given its language[.]'" *Id.* (citation omitted). "A statute is unconstitutionally vague if it fails to give fair notice to a person of ordinary intelligence regarding what it prohibits and if it fails to provide an objective standard for enforcement." *Id.*, ¶24 (citation omitted). "A fair degree of definiteness is all that is required." *Id.* The constitutionality of a statute is a question of law that we review independently. *See id.*, ¶22.

¶28 As we concluded above, WIS. STAT. § 939.48(3) is not vague. The statute clearly and unambiguously states that the privilege of self-defense is not applicable where "the unintended infliction of harm [to a third person] amounts to the crime of … homicide by negligent handling of a dangerous weapon." *See id.*

Where the unintended harm amounts to homicide by negligent handling of a dangerous weapon, as it does here, "the actor is liable for" that crime. Watson does not refute that WIS. STAT. § 939.48(3) makes the privilege of self-defense inapplicable to his criminally negligent homicide of Lattimore.

¶29    It is not deficient performance for trial counsel to not pursue futile arguments. *See Cameron*, 370 Wis. 2d 661, ¶27 ("It is not deficient performance for counsel not to make a pointless objection."); *Toliver*, 187 Wis. 2d at 360 (stating that counsel is not ineffective for failing to pursue futile arguments). It is also not prejudicial for trial counsel to have not raised a legal challenge to the statute if he could not establish that the challenge would have succeeded. *See State v. Jackson*, 229 Wis. 2d 328, 344, 600 N.W.2d 39 (Ct. App. 1999) (discussing that counsel's failure to present legal challenge is not prejudicial if defendant cannot establish challenge would have succeeded).

¶30    We conclude that because any challenge to the constitutionality of WIS. STAT. § 939.48(3) on the grounds that it is vague would have been futile, Watson has not shown that trial counsel was ineffective in failing to pursue that futile argument.

### C.    Watson did not adequately allege that WIS. STAT. § 939.48(3) was an *ex post facto law*

¶31    Watson makes a convoluted argument that WIS. STAT. § 939.48(3) is an *ex post facto* law because he was engaged in innocent conduct when he shot at Jones and that his conduct was privileged by self-defense. He argues that § 939.48(3) "retrospectively" "summarily converted" his innocent conduct of shooting at Jones in self-defense into "criminal conduct." He further argues that:

> At the time [Watson] pulled the trigger on his firearm, he
> was acting lawfully. At the time that the bullet travelled

14

> through the air, the intent of [Watson] that travelled with it, was innocent. It was not until the bullet regrettably and tragically struck [Lattimore] that [Watson's] conduct became a crime. Watson did not possess the requisite mens rea to form the intent necessary to either (a) formulate the intent to commit a crime or (b) have the intent transferred to his action.

He then argues that "[m]ore importantly, more than just a retrospective result is required to be criminally liable." He further argues that his "original conduct was not a crime. Therefore, it was only regarded as a crime retrospectively. Creating a crime of his innocent conduct, again retrospectively. Criminal statutes may not look retrospectively to determine criminality. Criminality must exist at the time the conduct was committed, never after."

¶32 We conclude that Watson fails to make a cogent argument for why the statute is *ex post facto*, and we reject his argument. In ***State v. Thiel***, 188 Wis. 2d 695, 703, 524 N.W.2d 641 (1994), our supreme court stated that

> [w]e hold that an ex post facto law, prohibited by the Wisconsin Constitution, is any law: which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed[.]

(Citation omitted and internal quotations omitted.)

¶33 Applying the holding in ***Thiel*** to the facts in this case, we conclude that WIS. STAT. § 939.48(3) is not an unconstitutional *ex post facto* law. As the State points out, in its current form, § 939.48(3) was enacted in 1988 by 1987 Wis. Act 399, § 472zkbm, effective January 1, 1989. The statute, in relevant part, provides that:

> The privilege of self-defense extends not only to the intentional infliction of harm upon a real or apparent

15

> wrongdoer, but also to the unintended infliction of harm upon a 3rd person, *except that if the unintended infliction of harm amounts to … first-degree or 2nd degree reckless homicide, homicide injury by negligent handling of a dangerous weapon … the actor is liable for whichever one of those crimes is committed.*

Sec. 939.48(3) (emphasis added). Pursuant to the statute, as relevant to the facts in this case, the "privilege of self-defense" does not extend to unintended infliction of harm upon a third person if the unintended infliction of harm amounts to homicide by negligent handling of a dangerous weapon, which is the crime that Watson was convicted of, and therefore, Watson is liable for committing that crime.

¶34    WISCONSIN STAT. § 939.48(3) was effective as of January 1, 1989—thirty-one years prior to Watson committing the crime on April 6, 2020. Thus, when he committed the crime of negligent handling of a dangerous weapon, his conduct was not innocent because the privilege of self-defense did not extend to his shooting Lattimore. Watson's conduct constituted a crime at the time he unintentionally shot Lattimore, who was an unintended third person under the statute. Thus, we conclude that § 939.48(3) was not an *ex post facto* law at the time Watson shot Lattimore, and therefore, he was properly convicted of the crime of negligent handling of a dangerous weapon.

¶35    Watson couches his allegation in terms of trial counsel being ineffective for not challenging the statute as being an *ex post facto* law. Because we conclude that the statute is not an *ex post facto* law, any challenge to the constitutionality of the statute would be futile.

¶36    It is not deficient performance for trial counsel to not pursue futile arguments. *See Cameron*, 370 Wis. 2d 661, ¶27 ("It is not deficient performance

16

for counsel not to make a pointless objection."); ***Toliver***, 187 Wis. 2d at 360 (stating that counsel is not ineffective for failing to pursue futile arguments). It is also not prejudicial for trial counsel to have not raised a legal challenge to the statute if he could not establish that the challenge would have succeeded. *See* ***Jackson***, 229 Wis. 2d at 344 (discussing that counsel's failure to present legal challenge is not prejudicial if defendant cannot establish challenge would have succeeded).

¶37 Thus, we conclude that because any challenge to the constitutionality of WIS. STAT. § 939.48(3) on the grounds that it was an *ex post facto* law would have been futile, Watson has not shown that trial counsel was ineffective in failing to pursue that futile argument.

## CONCLUSION

¶38 For the reasons stated above, we conclude that Watson could not claim a privilege of self-defense, pursuant to WIS. STAT. § 939.48(3), as to the homicide by negligent handling of a dangerous weapon that he was convicted of where he unintentionally shot and killed Lattimore. Thus, we conclude that the circuit court properly instructed the jury that Watson did not have a privilege of self-defense as to shooting and killing Lattimore, and therefore, trial counsel was not ineffective in not objecting to the jury instructions. We also conclude that § 939.48(3) is not unconstitutionally vague and is not an *ex post facto* law.

¶39 We, therefore, affirm the judgment and order of the circuit court and postconviction court.

*By the Court.*—Judgment and order affirmed.

17

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.